RECEIVED

JAN 2 7 2010

JAMES BONINI, CLERK
DAYTON, OHIO

United States District Court

Raymond Engle

3:10 cv 039

v.

Mary Wiseman

Barack Obama

Patrick Leahy

John G. Roberts

Eric Holden

Ted Strickland

Richard Cordray

Thomas Moyer

James A. Brogan

Mike Fain

Thomas J. Grady

Unknown Superiors of Montgomery County Ohio State Agents

John W. Kessler

John C. Ames

Carl Doraleski

Michael Columbrus

Gary Schaengold

Detective Phillip Olinger

Officer Stephen Clark

Officer Nathan Curley

Officer Chad Kraeler

Cindy Miller

Petite Juror

Jamie Dimon

UNITED STATES DISTRICT COURT—SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

Raymond Engle
           Complainant


Against                                        Case No.:

Common Pleas Court Judge                       Judge:
Mary Wiseman , at el                           Magistrate Judge:
Officially and Personally
           Respondent


Complaint
Brief and/or Memorandum in Support of Complaint
Memorandum in Support of Injunctive Relief


Pro Se                                  Attorneys for Respondents
Complainant                             Eric Holder
Raymond Engle                           950 Pennsylvania Avenue, N.W.
54 Bierce Avenue                        Washington, DC, 20530-0001
Dayton, Ohio 45403                      Phone:          (202) 514-2000
Phone:          (937) 252-6910          Fax:            202-514-4001


                                        Ohio Attorney General
                                        Richard Cordray
                                        30 East Broad Street
                                        Columbus, Ohio 43215
                                        Email:   www.ag.state.oh.us

## INDEX

Page

Index………………………………………………………………..…..i-xi

Jurisdiction……………………………………………………………..2

Jury Request………………………………………………………….…..2

Related Case:  Case No.:  3:09-cv-00451; Judge: Walter H. Rice……………………………2

Respondents' Addresses and Actions……………………………………..…….2-11

Respondents Lack Jurisdiction and are Maliciously Committing Fraud to Hide Their Conspiracy…………………………………………………………12-17

Statement and Facts of the Complaint……………………………………17-28

Denial of First Amendment /Lack of Jurisdiction due to Judicial Admissions—Perjury—Fraud—Conspiracy……………………………………………………...28-30

Double Jeopardy due to judicial admission of innocence………………………..…...30-31

Double Jeopardy: Petitioner being sentence to consecutive sentences for allied offenses…………………………………………………….…….…..31-32

Lack of Jurisdiction—Claim Preclusion—Failure to Notify ……………….………32-34

State Agents are maliciously declining to address Mr. Engle's grievances in violation of the 1st, 4th, 5th, 6th, 7th, 8th, 13th, and 14th USCA Constitutional Amendments due to his issues……..34-42

Knowing and/or should have known Petitioner's issues, Petitioner was coerced to Plea No Contest; and, said State Agents are attempting to use this coercive tactic to deny Petitioner of presenting his issues in violation of the 1st, 4th, 5th, 6th, 8th, 13th, and 14th Amendments of the United States Constitution.  Through judicial admission neither the trial court nor the court of appeals have and/or had jurisdiction to impose sanctions upon the Petitioner—except a judgment of acquittal…………………………………………………………42-50

Theft…………………………………………………………………50-51

Restraining Order……………………………………………………...51-54

Conclusion……………………………………………………………54-55

Pray for Relief………………………………………………………...55-60

i

Page

Affirmation.................................................................................................60

Exhibits:

Order.....................................................................................................61-62

Proof of Service......................................................................................63-64

Motion to File Only One Copy Due to Complainant's Poverty.........................65

Discovery....................................................................................................66

Summons....................................................................................................67

United States Constitution........................................................................ii-iii

Ohio Constitution..........................................................................................iii

Civil Rules of Procedure..............................................................................iii

Southern District of Ohio Civil Rule.............................................................iii

United States Code Annotated.....................................................................iii

Ohio House Bill............................................................................................iii

Ohio Rules of Civil Procedure.....................................................................iv

Ohio Rules of Criminal Procedure...............................................................iv

Ohio Rules of Evidence...............................................................................iv

Ohio Revised Code Annotated.....................................................................iv

Cases.....................................................................................................iv-xi

Reference: Material.......................................................................................xi

UNITED STATES CONSTITUTION

Article 1 § 10, cl. 1 ....................................................................................33

First Amendment.......................................17, 25, 26, 34, 35, 36, 37, 38, 44, 49, 53, 54

Fourth Amendment......................................17, 19, 20, 22, 24, 25, 26, 34, 40, 49, 53

Page

Fifth Amendment................17, 19, 20, 22, 24, 25, 26, 30, 31, 32, 33, 34, 37, 38, 42, 45, 49, 53

Sixth Amendment.............................................................17, 19, 25, 34, 38, 39, 44, 53

Eight Amendment.........................................................................17, 34, 35, 41, 53

Thirteenth Amendment.............................................................17, 34, 35, 41, 53

Fourteenth Amendment ............................14, 17, 19, 21, 25, 26, 34, 35, 38, 42, 44, 51, 53

Civil Rights Act of 1871............................................................................13

OHIO CONSTITUTION

Section 10, Article I....................................................................................48

CIVIL RULES OF PROCEDURE

U.S.C. 28 Civil Rule 54(c)............................................................................51

U.S.C. 28 Civil Rule 61................................................................................51

U.S.C. 28 Civil Rule 65................................................................................51

SOUTHERN DISTRICT OF OHIO CIVIL RULE

S.D. Civ. R. 3.1(b).......................................................................................2

UNITED STATES CODE ANNOTATED

18 U.S.C. § 1951....................................................................................2, 51

28 U.S.C. § 523...................................................................................15, 16

28 U.S.C. § 1361........................................................................................2

28 U.S.C. § 1746......................................................................................60

42 U.S.C. § 1983................................................................................2, 13, 14

42 U.S.C. § 1985................................................................................2, 13, 23

42 U.S.C. § 1986................................................................................2, 13

OHIO HOUSE BILL

Page

HB 130…………………………………………………………………………....…32

OHIO CIVIL RULES OF PROCEDURE

Ohio Civ. R. 54…………………………………………………………………….45

Ohio Civ. R. 58…………………………………………………………………….45

Ohio Civ. R. 60(B)………………………………………………………………….45

OHIO RULES OF CRIMINAL PROCEDURE

Ohio Crim.R. 48………………………………………………………....…43, 44

Ohio Crim.R. 11…………………………………………………………….44

OHIO RULES OF EVIDENCE

Ohio Evid. R. 201…………………………………………………………....…24

Ohio Evid. R. 402……………………………………………………...19, 21, 24

Ohio Evid. R. 403…………………………………………………………....…24, 32

Ohio Evid.R 603……………………………………………………………….18

Ohio Evid.R. 607……………………………………………………………...54

Ohio Evid. R. 613……………………………………………………………..…54

Ohio Evid. R. 616……………………………………………………………….54

Ohio Evid. R. 804A)(4)(B)(1)(B)(4)……………………………………………….18

Ohio Evid. R. 902…………………………………………………………….29

OHIO REVISED CODE ANNOTATED

O.R.C. § 2921.11(A)………………………………………....…………18, 20, 23, 43, 44, 48

O.R.C. §2929.14 …………………………………………………………...…31, 32

O.R.C. § 2945.15…………………………………………....……………………..43, 48

Page

ORC §2945.75 (A) (B)…………………………………………………..……………………31, 32

O.R.C. § 4121.80……………………………………………………..…………………………16

CASES

Ammons v. Dade City, Florida (M.D.Fla.1984) 549 F.Supp. 1274, 1302 …………….……15, 16

Anders v. California, 386 U.S. 738 (1967) …………………………………...……………………43

Angola v. Civiletti C.A. 2 (N.Y.) 1981, 666 F.2d 1…………………………………………...…49

Anti-Fascist Committee v. McGrath, 341 U.S. 123, 171-172 (1951) ……………………………15

Apprendi v. New Jersey, 530 U.S. 466 (2000) ………………………………………………33

Arizona v. Hicks, 480 U.S. 321, 322 (1987) ………………………………….……………..22, 41

Beech Aircraft Corp.  v. Rainey, 488 U.S. 153 (1988) ………………………………....19, 21

Bell Atlantic Corp. v. Twomby, 127 S.Ct. 1955, 1969 (2007) ………………….……..…….33, 38

Benson  v.  Superior  Court  Dept  of  Trial  Court  of  Mass  (CA1,  1981)  663  F.2d  355 ……………………………………………………………………….37

Benton v. Maryland, 395 U.S. 784, 785 (1969) …………………………………………….....38

Berger v. United States, 295 U.S. 78, 88 (1925) …………………………………………….41

Blakely v. Washington, 542 U.S. 296 (2004) ………………………………...…………………33

Blockburger v. United States, 284 U.S. 299, 304 (1932) ……………………..…………….31, 38

Boddie v. Connecticut, 401 U. S. 371 (1971) …………………………………...……………15

Bouie v. City of Columbia, 378 U.S. 347, 362 (1964) ……………………………………33

Bounds v. Smith, 430 U.S. 817, 824, 828 (1977) ……………………………………….35, 36

Brady v. Maryland, 373 U.S. 83, 86 (1963) …………………………………………..…………40

Brady v. United States, 397 U.S. 742, 748 (1970) ………………………………………24-25, 32

Page

Burgess v. United States, 553 U.S. 124 (2008) ………………………………..……………30, 32

Burks v. United States, 437 U.S. 1, 5-18 (1978) …………………...……...…30, 36, 37, 38, 44

Burns v. Ohio, 360 U.S. 252, 257 (1959) ……………………………………………………43

Bush v. Kelley's Inc. (1969) 18 Ohio St.2d 89, 92…………………………...…………………16

Calder v. Bull 3 Dall (3 U.S.) 386, 390 (1798)…………………………………..…………….46

Carey v. Piphus, 435 U.S. 247 (1978) …………………………………..…………14, 15, 31, 32, 34

Chapman v. California, 386 U.S. 18 (1967) …………………………………………………35

Chicago v. New York, 37 F.Supp 150……………………………...……………………….....12

Cleveland Bd of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) …………………..………33, 38

Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949) ………………………………………37

Cohens v. Virginia, 19 U.S (6Wheat.) 264 (1821) …………………………………..…………50

Colautti v. Franklin, 439 U.S. 379, 392-393, n 10 (1979) ………..……………………………32

County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991) ……………………..…………17, 40, 45

Crane v. Kentucky, 476 U.S. 683 (1986) ……………………………………………………….21

Danforth v. Minnesota, 128 S.Ct. 1029, 1036 (2008) …………………………..…………20, 40, 44

Darden v. Wainwright, 477 U.S. 168, 181 (1986) ………………………..………………19, 20, 41

Dillon v. Dillon, 187 P 27……………………………………………………………………….12

Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) …………………………………………41

Edelman v. Jordan, 415 U.S. 651, 678 (1974)……………………………………...……………45

Elrod v. Burns, 427 U.S. 347, 373 (1967) ……………………………………………………54

Ex parte Giambonini, 49 P. 732……………………………………………………………….12

Ex parte Hawk, 321 S.Ct. 114, 118 (1944) ……………………………………………………36

Page

Ex parte Wilson, 114 U.S. 417 (1885) …………………………………………...31

Falk v. Wachs (1996) 116 Ohio App.3d 716………………………………...…………..45

Gerstein v. Pugh, 420 U.S. 103, 111-119 (1975) …………………………………17, 40, 45

Gertz v. Robert Welch, Inc., 418 U. S. 323, 418 U. S. 349 (1974) ………………………...14

Green v. United States, 355 U.S. 184, 187 (1957) ………………………………………30, 38

Griffin v. Illinois, 351 U.S. 12, 20 (1956) …………………………………………………43

Herman v. Teplitz (1925)113 Ohio St. 164 …………………………………………...41

Hicks v. De La Cruz (1977) 52 Ohio St.2d 71………………………………………………45

Horton v. California, 496 U.S. 128, 135-136 (1990) ………………………………...……22, 41

Howard v. Cunard Line Ltd (1988) 62 Ohio App.3d 285…………………...……………….45

Imbler v. Pachtman, 424 U. S. 409, 424 U. S. 417 (1976) ……………………….....………14

In Re Application of Wyatt, 300 P. 132……………………………………………....12

In Re Cavitt, 118 P.2d 846……………………………………………………......……12

In Re Healthco Intern, Inc. (Bankr. D. Mass. 1996) 195 B.R. 971, 986..….……………15, 16

In re Oliver, 333 U.S. 257, 273 (1948) ……………………………………....…………35

In re Murphy (1983) 10 Ohio App.3d 134, 138………………………………………………46

In re Raymond Engle v. Michael Columbus, Case No.: 08-6937 …………………………36

In re Raymond Engle v. Strickland, Case No.: 07-10541 ……………………………………36

In re Wilcox Bkrtcy. N.D. Ohio 1983, 229 B.R. 411, 419………………………………….16

Internat1 Lottery, Inc. v. Kerouac (1995) 102 Ohio App.3d 660, 665……………...…………46

Jackson v. Virginia, 443 U.S. 307, 309 (1979) ………………………30, 36, 37, 38, 44

Jones v. VIP Development Co. (1984) 15 Ohio St.3d 90, 95………………….......………15, 16

vii

Page

Jordon v. Gilligan C.A. Ohio 1974 500 F.2d 701, 710………………………………..……..45

Joyce v. US, 474 F.2d 215…………………………………………………………………12

Kawaauhau v. Geiger, 523 U.S. 57 (1998)………………………………………………15, 16

Keeble v. United States, 412 U.S. 205 (1973) …………………………….……………….41

LaBarbera v. Batsch (1967) 10 Ohio St.2d 106………………………..……………………..45

Lantana v. Hopper, 102 F.2d 188………………………………………………………….12

Levine v. Torvik, 986 F.2d 1506, 1516 (6th Cir.), cert. denied, 509 U.S. 907 (1993)

…...……………………………………………………………………..………………….47

Lubben v. Selective Service System Local Bd. No. 27 (1st Cir. 1972) 453 F.2d 645…...…...…45

Malinovsky v. Court of Common Pleas of Lorain County 6th Ohio 1993, 7 F.3d 1263, Cert.den,

114 S.Ct. 1300 ………………………………………………….…………………...30, 31

Mapp v. Ohio, 367 U.S. 643, 655 (1961) ……………………………..…………….…..19, 20, 22, 24, 41

Melo v. US, 505 F2d 1026…………………………………………………………….....12

Merritt v. Hunter, C.A. Kansas 170 F2d 739……………………………………………….12

Miller v. Fenton, 474 U.S. 104 (1985) …………………………………………………….21

Miller v. Flordia 482 U.S. 423, 429 (1987)……………………………………………....46

Miranda v. Arizona, 384 U.S. 436, 462, 531 (1966) …………………………..……………22, 40

Mitchum v. Foster, 407 U. S. 225, 407 U. S. 238-242 (1972) …………………………………14

Monroe v. Pape, 365 U. S. 167, 365 U. S. 172-183 (1961) ……………………………13, 15, 16

Monsler v. Cincinnati Casualty Co., 74 Ohio App.3d 321, 328 (1991)…………………………15

Mooney v. Holohan, 294 U.S. 103, 110-111 (1935) ……………………………………….20, 40

Moore v. Illinois, 434 U.S. 220, 231 (1977) ………………………………..……………19, 24, 37

Page

Moran v. Burdine, 475 U.S. 412 (1986) ……………………………………..……………………..21

National Acceptance Co. America v. Bathalter (6th Cir. 1991) 951 F.2d 349…………………....45

New York v. Quarles, 467 U.S. 649 (1984) ………………………………………..……………..21

Norwood v. Renfield, 34 C. 329………………………………………………………………….12

Ohio v. Johnson, 467 U.S. 493, 498-99 (1984) …………………………………..…………….38

Oregon v. Elstad, 470 U.S. 298 (1985) ………………………………………..……………..21

Ornella v. Robertson (1968) 14 Ohio St.3d 144………………………………………………38

Oscanyan   v.   Winchester   Repeating   Arms   Company,   103   U.S.   261,   263   (1880) ………………………………………………………………..………………………19, 36, 38

Patterson v. New York, 432 U.S. 197, 201 (1977) ……………………...……………………..19,25

Patton v. Diemer (1988) 35 Ohio St.3d 68…………..………...……………………………….46

Payne v. Vance, 103 Ohio St. 59 (1921)……………….…..……………………………………15

Penson v. Ohio, 488 U.S. 75, 85 (1988) ………………………………………………………38, 46

Plaza Health Labs, Inc. v. Perales, 878 F.2d 577, 580 (2d cir. 1989) ………………..………..51

Pointer v. Texas, 380 U.S. 400 (1965) ………………………………………………………...39

Rankin v. McPherson, 483 U.S. 378 (1987) …………………………………………………….53

Rescue Army v. Municipal Court of Los Angeles, 171 P2d 8; 331 US 549 (1974) ……………12

Richards v. Jefferson County Ala, et al 517 U.S. 793 (1996) ……………………..…………...32

Rosemond v. Lambert, 469 F.2d 416……………………………………………………..…………...12

Rutledge v. United States, 517 U.S. 292 (1996) ……………………………...…………………31

Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003) …………………………………………38

Shapiro v. Thompson, 394 U.S. 618, 631 (1969) ………………………………….……………36

ix

Page

Sibron v. New York, 392 U.S. 40, 62-63 (1968) ……………………………………………22, 39

Smith v. Ohio, 494 U.S. 541, 542-543 (1990) …………………………………………………22, 39

State of Ohio v. Raymond Engle (2009) 122 Ohio St.3d 1505 …………………..……………..36

State of Ohio v. Raymond, 2009 Ohio 1944  ………………….... …………………...…….26, 36, 41

State v. Adams (1980) 62 Ohio St.2d 151, 157 ………………………………………..…………31

State v. Brooke (2007) 113 Ohio St.3d 199, 201 ……………………...………………21, 31, 32, 38

State v. Colon (2008) 118 Ohio St.3d 26 …………………………………………………32, 35, 49

Stirone v. United States, 361 U.S. 212 (1960) ………………………………………………..41

Stovall v. Denno, 388 U.S. 293, 302 (1967) …………………………………..…………………17, 37

Strickland v. Washington, 466 U.S. 668 (1984) …………………………….…………………38, 46

Taylor v. Sturgell, 128 S.Ct. 2161, 2173 (2008) …………………...…………………………33, 38

Tinker v. Colwell, 193 U.S. 473, 486 (1904)……………………………………………………15

United States v. Ball, 163 U.S. 662 (1896) …………………………………….…………………30, 33

United States v. Crawford CA 9, 2004, 372 F.3d 1048 ………………………………………38

United States v. Dunnigan, 507 U.S. 87, 94 (1992) …………………………………..……………40

United States v. Frances 6th 1999, 170 F.3d 546, 549 ……………………………………………20, 40

United States v. Jackson, 390 U.S. 570, 581, 582 (1968) ……………………….………………36, 47

United States v. Prudden, 424 F.2d 1021 (1970) ……………………………………….…………50

United States v. Sisson, 399 U.S. 267, 270, 311 (1970) ………………..………….21, 31, 32, 33, 36

United States v. Smith 1st 1993, 982 F.2d 681, 689 …………………………………….……..20, 40

United States v. Tweel, 550 F.2d 297, 299, 300 (1977) ……………………………………..50

United States v. Wade, 388 U.S. 218, 224 (1967) …………………………………..17, 19, 24, 37

Page

United States v. Will, 449 U.S. 200, 216 (1980) ………………………..………………47, 49-50

Van ReRyt v. Van ReRyt (1966) 6 Ohio St.2d 31, 35……………………..………………....46

Washington v. Texas, 388 U.S. 14. 19 (1967) …………………………..…………35, 39, 40

Wheeler v. Laudani (6th Cir. 1986) 783 F.2d 610, 615………………………………….15

Williams v. Taylor, 529 U.S. 362, 402-03 (2000) …………………………………………35

Wuest v. Wuest, 127 P2d 934, 937……………………………………………………………12

Reference Material

1 F. Harper & F. James Law of Torts §§ 5.19-5.13 (1956)……………………………....34

1 F. Harper & F. James, Law of Torts § 5.30, p. 468 (1956)…………………………………34

C. McCormick, Law of Damages § 116, p. 423 (1935) …………………………………14

Fraud:  Black's Law Dictionary, Fifth Edition, page 594 ….………………………16-17

Restatement (Second) of Torts §§ 558, 569-574 (1977)…………………………………....34

Restatement (Second) of Torts § 8A……………………………………………………15, 16

Restatement of Torts § 621 a, p. 314 (1938)…………………………………………………34

W. Prosser, Law of Torts § 112 (4th ed. 1971)…………………..………………………34

JURISDICTION

This Court has jurisdiction pursuant to 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; 28 U.S.C. § 1361; and, 18 U.S.C. § 1951.

JURY REQUEST

Complainant does request a jury trial in this matter.

RELATED CASE

Case No.: 3:09-cv-00451; Judge: Walter H. Rice, as required by S.D. Ohio Civ. R. 3.1(b)

RESPONDENTS' ADDRESSES AND ACTIONS

President, Barack Obama, 1600 Pennsylvania Avenue NW, Washington, DC 20500, Switchboard: 202-456-1414, FAX: 202-456-2461, in his official and personal capacity; neglecting his duties to uphold and protect the United States Constitution; neglecting his duties to correct the actions of his subordinates; and, without jurisdiction to do so; said federal agent in conspiracy with state agents knowingly and/or recklessly commits fraud to falsely incarcerate and/or slanderously character assassinate   Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Senator, Patrick J. Leahy, 433 Russell Senate Office Building, Washington, DC, 20510-6275, Phone: (202) 224-4242, FAX: (202) 224-3479, in his official and personal capacity; neglecting his duties to uphold and protect the United States Constitution; neglecting his duties to correct the actions of his subordinates; and, without jurisdiction to do so; said federal agent in conspiracy with state agents knowingly and/or recklessly commits fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or

- 2 -

humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

United States Supreme Court Chief Justice, John G. Roberts, One 1st St., NE , Washington , DC 20543, Phone: 202-479-3211, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his subordinates and/or encouraging the actions of his subordinates, and maliciously using his positions as an offensive weapon; and, without fear of retribution from his superiors; and, without jurisdiction to do so; said federal agent in conspiracy with state agents knowingly and maliciously commits fraud and/or perjury to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Attorney General of the United States, Eric Holden, U.S. Department of Justice , 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, Main Switchboard - 202-514-2000, http://www.justice.gov/., FAX: 202-514-4001, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his subordinates and/or encouraging the actions of his subordinates, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors; and, without jurisdiction to do so; said federal agent in conspiracy with state agents knowingly and maliciously commits fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

- 3 -

Ohio Governor Ted Strickland, Governor's Office, Riffe Center, 30th Floor, 77 South High Street, Columbus, OH 43215-6108, General Info: (614) 466-3555, FAX: (614) 466-9354, in his official and personal capacity; neglecting his duties to uphold and protect the United States Constitution; neglecting his duties to correct the actions of his subordinates and/or encouraging the actions of his subordinates, and using his position as an offensive weapon; and, without fear of retribution from his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and/or recklessly commits fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Attorney General for the State of Ohio, Richard Cordray, 30 E. Broad St., 17th Floor, Columbus, OH 43215, www.ag.state.oh.us, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his subordinates and/or encouraging the actions of his subordinates, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Ohio Supreme Court Chief Justice, Thomas Moyer, Office of the Clerk, 65 South Front Street, 8th Floor, Columbus, Ohio 43215-3421, Phone: 614-387-9530, FAX: 614-387-9539, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United

States Constitution; maliciously neglecting his duties to correct the actions of his subordinates and/or encouraging his subordinates to act in such a manner, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Second District Court of Appeals for Ohio Appellate Judges: James A. Brogan, Mike Fain; and, Thomas J. Grady, 41 North Perry Street, Fifth Floor, P.O. Box 972, Dayton, Ohio 45422-2170, Phone: (937) 225-4464, FAX: (937) 496-7724,in their official and personal capacity; maliciously neglecting their duties to uphold and protect the United States Constitution; maliciously neglecting their duties to correct the actions of their subordinates and/or encouraging their subordinates to act in such a manner, and maliciously using their position as an offensive weapon; and, without fear of retribution from their superiors; and, without jurisdiction to do so; said state agents in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Unknown: Superiors of  Montgomery County Ohio State Agents named herein, in their official and  personal  capacity;  neglecting  their  duties  to  uphold  and  protect  the  United  States Constitution;  neglecting  their  duties  to  correct  the  actions  of  their  subordinates  and/or

encouraging their subordinates to act in such a manner; and, using their position as an offensive weapon; and, without fear of retribution from their superiors; and, without jurisdiction to do so; said state agents in conspiracy with other state agents negligently and/or recklessly allow the following state agents to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships.  Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio Common Pleas Court Judge John W. Kessler, 303 West Second Street, Dayton, Ohio 45422, Court Administrator's Office, Phone 937-225-6000, FAX: 937-496-7389, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his subordinates and/or encouraging his subordinates to act in such a manner, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio Common Pleas Court Judge Mary Wiseman, 303 West Second Street, Dayton, Ohio, 45422, Phone: 937-225-4384, FAX: 937-834-7999, in her official and personal capacity; maliciously neglecting her duties to uphold and protect the United States Constitution; maliciously neglecting her duties to correct the actions of her subordinates and/or encouraging her subordinates to act in such a manner, and maliciously using her position as an offensive

weapon; and, without fear of retribution from her superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Assistant Prosecutor John C Amos, Prosecuting Attorney, Mathias H. Heck, Jr., Montgomery County Prosecutor's Office, 303 West Second, P.O. Box 972, Dayton, Ohio 45422-0972, Phone: 937-225-5757, Email: info.@mcpo.com, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his peers and/or encouraging his subordinates and/or peers to act in such a manner, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Assistant Public Defender Carl Goraleski, The Law Office of the Public Defender, 117 South Main Street, 4th Floor, Reibold Building, Dayton, Ohio 45422, Phone: 937-225-4652, FAX: 937-225-3449, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his peers and/or encouraging his subordinates and/or peers to

act in such a manner; maliciously neglecting his duties to represent his court appointed client to the best of his abilities, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors, and/or requirement to act in such a manner by his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Court Appointed Appellate Attorney Michael Columbus, 130 W 2nd St, Dayton, OH 45402, (937) 461-2923, http://lawyers.justia.com/lawyer/michael-columbus-esq-485466/contact, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his peers; maliciously neglecting his duties to represent his court appointed client to the best of his abilities, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors and/or requirement to act in such a manner by his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Court Appointed Appellate Attorney  Gary Schaengold, in his official and personal capacity, 707 Shroyer Road, Suite B, Dayton, Ohio 45419, email: gschaengold.law@sbcglobal.net; maliciously neglecting his duties to uphold and protect the

United States Constitution; maliciously neglecting his duties to correct the actions of his peers; maliciously neglecting his duties to represent his court appointed client to the best of his abilities, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors and/or requirement to act in such a manner by his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail

Montgomery County Ohio—Dayton Detective Phillip Olinger, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his peers and/or subordinates, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors, and/or requirement to act in such a manner by his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Police Officer Stephen Clark, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his peers, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors, and/or

requirement to act in such a manner by his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Police Officer Nathan Curley, in his official and personal capacity; neglecting his duties to uphold and protect the United States Constitution; neglecting his duties to correct the actions of his peers, and using his position as an offensive weapon; and, without fear of retribution from his superiors, and/or requirement to act in such a manner by his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and/or recklessly commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Police Officer Chad Knedler, in his official and personal capacity; maliciously neglecting his duties to uphold and protect the United States Constitution; maliciously neglecting his duties to correct the actions of his peers, and maliciously using his position as an offensive weapon; and, without fear of retribution from his superiors, and/or requirement to act in such a manner by his superiors; and, without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education,

- 10 -

employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

State agent Cindy Miller, in her official and personal capacity; without jurisdiction to do so; said state agent in conspiracy with other state agents knowingly and maliciously commits perjury to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

Montgomery County Ohio—Dayton Petite Jurors, (Montgomery County Employees), in their official and personal capacity; without jurisdiction to do so; said petite jurors in conspiracy; and, without fear of retribution from their superiors, and/or requirement to act in such a manner by there superiors; and, without jurisdiction to do so; said state agents in conspiracy with other state agents knowingly and maliciously commits perjury and/or fraud to falsely incarcerate and/or slanderously character assassinate Petitioner causing Complainant distress and/or humiliation, loss of ability to pursue advance education, employment; and, normal social relationships. Said facts supporting this allegation are further set forth herein in detail.

CEO, Chase Bank, Jamie Dimon, corporate.secretary@jpmchase.com., JPMorgan Chase & Co., Office of the Secretary, 270 Park Avenue, New York, NY 10017, in his official and personal capacity; without the jurisdiction to do so, said party in conspiracy with states agents have knowingly and maliciously ignored Complainant's Constitutional right to Due Process; and, failing to train and/or instruct his subordinates in said matters have embezzled and/or extorted Petitioner's personal property causing Complainant distress and/or humiliation, loss of ability to

pursue advance education, employment; and, normal social relationships; and, that said property

having been in the control and/or custody of state agents at all times pertinent to this matter.

<u>RESPONDENTS LACK JURISDICTION AND ARE MALICIOUSLY</u>
<u>COMMITTING FRAUD TO HIDE THEIR CONSPIRACY</u>

Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court

lacks jurisdiction, the court has no authority to reach merits, but rather, should dismiss the

action." <u>Melo v. U.S. 505 F2d 1026</u>. "There is no discretion to ignore that lack of jurisdiction."

<u>Joyce v. US, 474 F.2d 215</u>. "The burden shifts to the court to prove jurisdiction." <u>Rosemond v.</u>

<u>Lambert, 469 F.2d 416</u>. "Court must prove on the record, all jurisdiction facts related to the

jurisdiction asserted." <u>Lantana v. Hopper, 102 F.2d 188; Chicago v. New York, 37 F.Supp 150</u>.

"A universal principle as old as the law is that proceedings of a court without jurisdiction are a

nullity and its judgment therein without effect either on person or property." <u>Norwood v.</u>

<u>Renfield, 34 C 329; Ex parte Giambonini, 49 P. 732</u>. "Jurisdiction is fundamental and a judgment

rendered by a court that does not have jurisdiction to hear is void ab initio." <u>In Re Application of</u>

<u>Wyatt, 300 P. 132; In Re Cavitt, 118 P.2d 846</u>. "Thus, where a judicial tribunal has no

jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void

in the fullest sense of the term." <u>Dillon v. Dillon, 187 P 27</u>. "A court has no jurisdiction to

determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act,

and a court must have the authority to decide that question in the first instance." <u>Rescue Army v.</u>

<u>Municipal Court of Los Angeles, 171 P2d 8; 331 U.S. 549 (1947)</u>. "A departure by a court from

those recognized and established requirements of law; however close apparent adherence to mere

form in method of procedure, which has the effect of depriving one of a constitutional right, is an

excess of jurisdiction." <u>Wuest v. Wuest, 127 P2d 934, 937</u>. "Where a court failed to observe

safeguards, it amounts to denial of due process of law ..." <u>Merritt v. Hunter, C.A. Kansas 170</u>
<u>F.2d 739</u>.

<u>42 U.S.C. § 1985(3)</u>, made it unlawful to conspire, inter alia, "for the purpose of depriving any
person or any class of persons of the equal protection of the laws, or of equal privileges or
immunities under the laws. . . ." It further provided (emphasis supplied): "[I]f any one or more
persons engaged in any such conspiracy shall do, or cause to be done, any act in furtherance of
the object of such conspiracy, whereby any person shall be injured in his person or property, or
deprived of having and exercising any right or privilege of a citizen of the United States, the
person so injured or deprived of such rights and privileges may have and maintain an action for
the recovery of damages occasioned by such injury or deprivation of rights and privileges against
any one or more of the persons engaged in such conspiracy. . . ." Section 6 of the Act, 17 Stat.
15, now codified at <u>42 U.S.C. § 1986</u>, provided (emphasis supplied): "[A]ny person or persons,
having knowledge that any of the wrongs conspired to be done and mentioned in the second
section of this act are about to be committed, and having power to prevent or aid in preventing
the same, shall neglect or refuse to do so, and such wrongful act shall be committed, such person
or persons shall be liable to the person injured, or his legal representatives, for all damages
caused by any such wrongful act. . . ."

Declaratory and Injunctive relief: <u>Title 42 U.S.C. § 1983</u>, Rev.Stat. § 1979, derived from <u>§ 1</u> of
the <u>Civil Rights Act of 1871</u>, 17 Stat. 13, provides: "Every person who, under color of any
statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to
be subjected, any citizen of the United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress." The legislative history of § 1983, elsewhere detailed, e.g., Monroe v. Pape, 365 U. S. 167, 365 U. S. 172-183 (1961); id. at 365 U. S. 225-234 (Frankfurter, J., dissenting in part); Mitchum v. Foster, 407 U. S. 225, 407 U. S. 238-242 (1972), demonstrates that it was intended to "[create] a species of tort liability" in favor of persons who are deprived of "rights, privileges, or immunities secured" to them by the Constitution. Imbler v. Pachtman, 424 U. S. 409, 424 U. S. 417 (1976).

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law. . . ." arouses strong feelings of mental and emotional distress in the individual who is denied this "feeling of just treatment." C. McCormick, Law of Damages § 116, p. 423 (1935), Carey v. Piphus, 435 U.S. 247, 262 (1978) to allow recover damages for mental and emotional distress caused by the denial of procedural due process. We agree with petitioner[] in this respect. As we have observed in another context, the doctrine of presumed damages in the common law of defamation per se "is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss.", Gertz v. Robert Welch, Inc., 418 U. S. 323, 418 U. S. 349 (1974). The doctrine has been defended on the grounds that those forms of defamation that are actionable per se are virtually certain to cause serious injury to reputation, and that this kind of injury is extremely difficult to prove. See id. at 418 U. S. 373, 418 U. S. 376 (WHITE, J., dissenting). Moreover, statements that are defamatory per se, by their very nature, are likely to cause mental and emotional distress, as well as injury to reputation, so there arguably is little reason to require proof of this kind of injury either. Carey, 435 U. S. 263; mental and emotional distress caused by the denial of procedural due process itself is compensable under 42 § 1983, Carey, 435 U. S. 264: and, exemplary or punitive damages, to deter or punish malicious deprivations of rights,

- 14 -

Carey, 435 U. S. 266. Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, see Boddie v. Connecticut, 401 U. S. 371 (1971); Anti-Fascist Committee v. McGrath, 341 U.S. at 171-172 (Frankfurter, J., concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. Carey 435 U. S. 267. In tort law it is a generally accepted principle that liability is imposed, for an intentional tort, for acts done with, (1) the intent to cause harm, and (2) acts the defendant knows are substantially certain to cause harm, Ammons v. Dade City, Florida (M.D.Fla.1984) 594 F.Supp. 1274, 1302; In re Healthco Intern. Inc. (Bankr.D.Mass.1996) 195 B.R. 971, 986; citing RESTATEMENT (SECOND) OF TORTS § 8A; see also Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Similarly under § 523(a)(6) malice means "in conscious disregard of one's duties or without just cause or excuse." Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir.1986), citing Tinker v. Colwell, 193 U.S. 473, 486 (1904). In Ohio, the term willful, as it pertains to intentional torts, is generally synonymous with the term intentional, Monsler v. Cincinnati Casualty Co., 74 Ohio App.3d 321, 328 (1991); See also Payne v. Vance, 103 Ohio St. 59 (1921). In Ohio, an act is done intentionally if "committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur," Jones v. VIP Development Co., 15 Ohio St.3d 90, 95 472 (1984). By comparison, the United States Supreme Court in Kawaauhau v. Geiger stated that the term willful, under § 523(a)(6), "takes a deliberate or intentional injury, not merely ... a deliberate or intentional act that leads to injury," 523 U.S. 57 (1998). A close examination of the two definitions shows Ohio's interpretation specifically allows for liability based upon intentional acts the defendant believes are substantially certain to

- 15 -

cause injury... However, this Court finds, based upon the following analysis, that the Supreme Court's holding in <u>Kawaauhau</u> does encompass acts a defendant knows are substantially certain to cause injury.  In <u>Jones</u> the Ohio Supreme Court was interpreting the meaning of the word intentional under <u>O.R.C § 4121.80</u>. The Ohio State legislature has since clarified the Ohio Supreme Court's interpretation of "substantially certain" under <u>O.R.C. § 4121.80</u> to mean when an employer acts with deliberate intent to cause an employee to suffer injury, disease, or death. In <u>Kawaauhau</u>, the Supreme Court was eliminating any possibility of negligent or reckless acts falling within <u>§ 523(a)(6)</u>'s exceptions to discharge, <u>Id. 118 S.Ct. at 977</u>. However, in <u>Kawaauhau</u> the Supreme Court was not trying to eliminate intentional torts, such as assault and battery, from being excepted from nondischargeability under <u>§ 523(a)(6)</u>. For example, in <u>Kawaauhau</u> the Court specifically stated that, "<u>§ 523(a)(6)</u>'s formulation triggers in the lawyer's mind the category intentional torts," <u>Id. 118 S.Ct. at 975</u>. In tort law it is a generally accepted principle that liability is imposed, for an intentional tort, for acts done with, (1) the intent to cause harm, and (2) acts the defendant knows are substantially certain to cause harm, <u>Ammons v. Dade City, Florida, 594 F.Supp. 1274, 1302 (M.D.Fla.1984); In re Healthco Intern. Inc., 195 B.R. 971, 986 (Bankr.D.Mass.1996), citing RESTATEMENT (SECOND) OF TORTS § 8A; see also Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961)</u>. Consequently, it would be difficult to suppose that the Supreme Court's ruling in <u>Kawaauhau</u> only includes acts done with the intent to cause injury, and would not include intentional acts that a defendant knows are substantially certain to cause injury.  This Court also comes to the same conclusion with the definition of malice. Under Ohio law malice means the willful doing of a wrongful act without just cause or excuse. <u>Bush v. Kelley's Inc., 18 Ohio St.2d 89, 92 (1969); In re Wilcox Bkrtcy.N.D.Ohio,1998, 229 B.R. 411, 419</u>.

Fraud:  An intentional perversion of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right.  A false representation of a matter of fact which deceives and is intended to deceive another so that he shall act upon it to his legal injury.  It consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him injury (Emphasis supplied) <u>Black's Law Dictionary, Fifth Edition, page 594</u>.   These facts and conclusions of law pertain to all Respondents, infra and supra, in denying Complainant Due Process by maliciously denying Complainant Access to a United States State Court and maliciously using that Court to falsely incarcerate and slanderously character assassinate Complainant among their peers, subordinates, superiors; and, the general public to conceal Respondents' indiscretions.

<u>STATEMENT AND FACTS OF THE COMPLAINT</u>

Arrested March 24, 2007; indicted April 2, 2007; and, hearing held April 5, 2007, Doc. #1. <u>Gerstein v. Pugh, 420 U.S. 103, 111-119 (1975); County of Riverside v. McLaughlin 500 U.S. 44, 56 (1991); and, 1st, 4th, 5th, 6th, 8th, 13th, and 14th USCA Const. Amend(s),</u> violation judicially admitted and maliciously ignored, infra.

Suppression Hearing plea Denied, May 24, 2007, with the intentional use of perjury and concealment of that perjury; Judge John W Kessler admits to the appropriate United States Court precedents that would have excluded the one-on-one on scene identification and the photo line up at said hearing, <u>United States v. Wade 388 U.S. 218, 224 (1967); Stovall v. Denno, 388 U.S. 293, 302 (1967);</u> but, refuses to apply them—Maliciously ignored by Superiors, infra.

The Ohio Supreme Court on June 20, 2007, refused to file Petitioner's Pro Se Writ of Mandamus alleging the manufacturing of evidence—inadmissible evidence.  The trial court denied said Pro

Se Writ of Mandamus on July 10, 2007. ((Trial court lacks the jurisdiction to entertain a Petition for Writ of Mandamus (Case cites omitted)) It should be judicially noted that Montgomery County Jail does not possess a law library for pro se litigants, and Complainant represented himself as a Pro Se Indigent Defendant.

Jury Trial held July 23-24, 2007:  Complainant reserves the right to litigate the impaneling of the jury (specifically—Montgomery County employees being impaneled on the petite jury after discovery has been fulfilled).  Detective Phillip Olinger testifies (See Ohio Evidence Rule 804A) (4) (B) (1) (B) (4); and, 603) "I shook his hand and I noticed scrapes all up and down his arms", Suppression Hearing 24.   Ms Miller testifies she did not have an opportunity to touch her attackers' arms, Transcript 72.  Ms Miller did not notice any wounds/injuries to her attackers' arms, Transcript 73.   After Ms Miller testifies she did not touch or notice any injuries to her attackers' arms, Detective Olinger testifies, "I observed he had some injuries to both of his arms from scratches, some light bruising.   He [the Complainant] didn't know how he got them, Transcript 142.  Prosecutor John C Amos accosts Mr. Engle with: "So you can't explain how the scrapes got on top of your arms".  Mr. Engle responds with the question: "On top", Transcript 201.  Then Prosecutor John C Amos tells the jury: "However, we do know he had some scrapes on his arms, don't we? And you're going to see the pictures of those.  He offered an explanation for you to consider.  I submit to you it doesn't make sense for what he said.  If he was falling down earlier that night, the scrapes would've been underneath.  You are going to see the scrapes are on top—Okay," Transcript 232.   The States' Exhibits 16 and 17 show said injuries to Petitioners' elbows.  Prosecutor John C Amos in conspiracy with Detective Olinger maliciously presented to the jury known perjury in violation of Ohio Criminal Statute §2921.11(A).  Ms Miller prior to Detective Olinger testifying or Prosecutor John C Amos' speech testifies she did

not touch her attackers' arms, nor did she notice any injuries to her attackers' arms; this is

perjury, Ohio Criminal Statute §2921.11(A). This is fraud to shift the burden of persuasion to

Complainant in violation of Patterson v. New York, 432 U.S. 197, 201 (1977) to Mr. Engle with

improper suggestion/insinuation, Darden v. Wainwright, 477 U.S. 168, 181 (1986), and it is not

Mr. Engle's place to prove anything, Fifth, Sixth, and Fourteenth Amendments—especially not

an element that is irrelevant and inadmissible, Ohio Evidence Rule 402; Beech Aircraft Corp. v.

Rainey, 488 U.S. 153 (1988), has no probative value to the facts in issue and said pictures

(States' Exhibits 16 and 17) must be excluded, Mapp v. Ohio, 367 U.S. 643, 655 (1961), as they

are immune under the Fourth Amendment and inadmissible under the Fifth Amendment. Ms

Miller's attacker wore a white t-shirt with black sleeves (March 24, 2007, Detective

Investigation Product 3) Ms Miller testifies her attacker wore a white t-shirt with black sleeves,

Transcript page 28. Detective Olinger judicially admits, Oscanyan v. Winchester Repeating

Arms Company, 103 U.S. 261, 263 (1880), that he picked 5 of the 6 potential suspects in State's

Exhibit #9, Suppression Hearing 28. Detective Olinger judicially admits Mr. Engle is the only

potential suspect in State's Exhibit #9 wearing what appears to be a light t-shirt with dark sleeves,

Transcript 157. Detective Olinger judicially admits to his ability and knowledge to alter State's

Exhibit #9, Transcript 163. Detective Olinger judicially admits it was just Ms Miller and he

when Ms Miller identified Mr. Engle from State's Exhibit #9, Suppression Hearing 30. In

United States v. Wade, 388 U.S. 218, 224 (1967), the United States Supreme Court forbids the

states from placing a potential suspect in a lineup and him/her being the only one wearing what

appears to be like or similar clothing as the alleged perpetrator; and, any pretrial identification

made without the presence of counsel is inadmissible at trial, Moore v. Illinois, 434 U.S. 220,

231 (1977). Mr. Engle pleads with the trial court to allow him to enter the clothing he wore

when arrested into evidence, Transcript 63, 64, 65, and 66.  It should be judicially noted that said

clothing was requested in discovery.  As soon as Mr. Engle's clothing enters into the courtroom

Ms Miller changes her testimony to her attacker wore a gray t-shirt with dark sleeves, Transcript

77.  This is perjury, Ohio Criminal Statute §2921.11(A), and this piece of perjury is co-signed

when Officer Stephen Clark testifies: Description…gray t-shirt with black sleeves", Transcript

118.  State's Exhibit 15 proves Mr. Engle's clothing was a gray shirt with blue sleeves.

Prosecutor John C Amos judicially admits to the discrepancy of the color of shirt, Transcript 199.

State's Exhibit #9 in Physics is referred to as an optical illusion; it is the only Black and White

photo the State of Ohio enters into evidence; and, it gives the observer the optical illusion of

being a white t-shirt with black sleeves.  Ms Miller commits perjury by changing the description

of the alleged perpetrator's clothing to that in detail of the clothing Petitioner wore upon arrest.

Officer Stephen Clark commits perjury by changing the description of the alleged perpetrator's

clothing to that in detail of the clothing Petitioner wore upon arrest.  Prosecutor John C Amos

tells the jury:  to believe Mr. Engle's conspiracy theory is impossible and No! Don't do it; but,

Ms Miller's testimony is credible, Transcript page 242-243.  Prosecutor John C Amos shifts the

burden of persuasion in violation of United States Supreme Court precedent, Darden v.

Wainwright, 477 U.S. 168, 181 (1986); and, maliciously supports and presents perjury in

violation of United States Supreme Court precedent, Mooney v. Holohan 294 U.S. 103, 110-111

(1935); Danforth v. Minnesota, 128 S.Ct. 1029, 1036 (2008).  A prosecutor may not express his

personal opinion as to a defendant's guilt or credibility, United States v. Smith 1st 1993, 982

F.2d 681, 689, or state his witness is credible, United States v. Frances 6th 1999, 170 F.3d 546,

549.  Any and all evidence and/or testimony relating to States' Exhibits #9 and #15 are immune

under the Fourth Amendment and inadmissible under the Fifth Amendment; Mapp v. Ohio 367

U.S. 643, 655 (1961). State's Exhibit #9 has been mechanically altered as judicially admitted to by Detective Olinger, Transcript 163. It was just Ms Miller and Detective Olinger when Ms Miller identified Mr. Engle as the perpetrator. State's Exhibit #9 is an optical illusion to make it appear to be a white t-shirt with black sleeves. State's Exhibit #15 proves Mr. Engle's shirt was/is a gray shirt with blue sleeves. After Mr. Engle begs, id, the trial court for his clothing wore upon arrest, Prosecutor John C Amos Commanders Mr. Engle's clothing in a Gestapo tactic; calls Mr. Engle a liar; and, tells the jury to not believe his conspiracy theory, Transcript 242. This is conspiracy—fraud—perjury, participated in maliciously, knowingly, intelligently, and with recalculated design after Petitioner requested his clothing to be entered into evidence to intentionally cause Complainant harm.

Detective Olinger judicially admits that State's Exhibit #10 in ½ inch cursive—written at the focal point—is the word/allegation rape, Transcript 151. Mr. Engle's indictment (doc. #1) does not charge Mr. Engle with rape and the State of Ohio and/or its agents lack the jurisdiction to consider such a slanderous allegations, United States v. Sisson, 399 U.S. 267, 270 (1970); State v. Brooke (2007) 113 Ohio St.3d 199, 201 (checked) This one word proves Mr. Engle's interrogation setting was offensive and condemned pursuant to the Fourteenth Amendment, See Crane v. Kentucky, 476 U.S. 683 (1986); Miller v. Fenton, 474 U.S. 104 (1985). That Mr. Engle did not have an un-coerced choice fully appraised of the nature and consequences of the waiver, Moran v. Burdine, 475 U.S. 412 (1986). It was coercion, New York v. Quarles, 467 U.S. 649 (1984). It was moral and psychological pressure to confess, Oregon v. Elstad, 470 U.S. 298 (1985). It is irrelevant and inadmissible, Ohio Evidence Rule 402; Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988). Detective Olinger judicially admits he could not recall when he went over Miranda's warnings and waiver with Mr. Engle, Suppression Hearing 20; but, that it

was accurately written in his narrative, Suppression Hearing 25.  In the Detective Investigation Product Detective Olinger writes he went over the CCH at the end of the interview, Detective Investigation Product 5.  The Detective Investigation Product was excluded from the record, Transcript 215-218.  This does not satisfy the United States Supreme Court mandates in <u>Miranda v. Arizona 384 U.S. 436, 462, 531 (1966)</u>.  Under the leading questioning of Prosecutor John C Amos, Detective Olinger testifies as follows:  "Prior to interviewing a suspect, are you familiar with the Miranda warnings. I am.  And did you go over those Miranda warnings with the defendant? I did." Transcript 135-136.  This is fraud—this is conspiracy—this is perjury, <u>Ohio Criminal Statute §2921.11(A)</u>.  Detective Olinger judicially admits "You did not confess to touching her or to breaking in", Transcript 150.  Prosecutor John C Amos judicially admits "A full confession is I did it; I did the Burglary; I did the GSI.  No, He did not do that.  We will give him that", Transcript 244.  Any and all evidence and/or testimony relating to State's Exhibit #10 and #11 are immune under the <u>Fourth Amendment</u> and inadmissible under the <u>Fifth Amendment</u>, <u>Mapp v. Ohio 367 U.S. 643, 655 (1961)</u>.

Mr. Engle's school backpack, State's Exhibit #14, was not and is not evidence of a crime or contraband, <u>Arizona v. Hicks, 480 U.S. 321, 322 (1987)</u>.  Officer Chad Knedler did not have a lawful right to where Mr. Engle's school backpack was located, <u>Horton v. California, 496 U.S. 128, 135-136, (1990)</u>; nor, did Officer Chad Knedler have a lawful right to search Mr. Engle's school backpack,  <u>Smith v. Ohio, 494 U.S. 541, 542-543 (1990)</u>.  All three Officers:  Chad Knedler, Stephen Clark, and Nathan Curley judicially admit that the illegal incident search and seizure of Mr. Engle's school backpack that was sitting on Mr. Engle's back porch  proceeds Mr. Engle's arrest and serves as justification for that arrest, <u>Sibron v. New York, 392 U.S. 40, 62-63 (1968)</u>.  Officer Chad Knedler testifies he found Mr. Engle's school backpack on the back porch,

Transcript 91-92.  The State's photo exhibits, infra, shows two security fence gates Officer Chad Knedler had to pass through to arrive at the location where Mr. Engle's school backpack was located.  Officer Chad Knedler testifies: "I found a bag—a gym bag/type of backpack actually— with the property inside.   I remember there was an ID inside, a wallet; I believe a ring and some clothing, Suppression Hearing 8.  And this testimony is confirmed under the leading questioning of Prosecutor John C Amos, where Officer Chad Knedler testifies as follows:  "So Raymond Engle's social security card was in the bag—correct", Suppression Hearing 9.  Officer Chad Knedler judicially admits he could not see Mr. Engle's school backpack from Ms Miller's kitchen window—that it was night time and raining, Transcript 95.  Prosecutor Kirsten Brandt judicially admits that some form of artificial light is needed to see anything, State of Ohio v. Raymond, 2009 Ohio 1944, Reply Brief 15.  Officer Chad Knedler looked inside the wallet and saw a social security card, Transcript 95.  And under the leading questioning of Prosecutor John C Amos, Officer Chad Knedler testifies as follows:  "Was the wallet in the bag—No, it was not", Transcript 96.  This is fraud—conspiracy—perjury, Ohio Criminal Statute §2921.11(A), and 42 U.S.C. § 1985(3). Officer Chad Knedler testifies Mr. Engle had a past at this address, Transcript 99, and that this information was considered suspect information at this time, Transcript 100. Officer Stephen Clark testifies: Officer Knedler had actually got on the radio and said he had located a backpack on the back porch of the house just to the West of 58 Bierce, Transcript 119. Upon checking the bag, he found an ID, gave us the information on the ID, which we checked, Transcript 120.  Officer Nathan Curley testifies that, "The nature of the broadcast was that an individual by the name of Raymond Engle, we were looking for him [in] reference [to] a burglary, because his identification was found at the scene", Transcript 127.

- 23 -

Officer Chad Knedler testifies Ms Miller was upset and crying, Suppression Hearing 7.   Officer

Chad Knedler changes his testimony to Ms Miller was upset but was not crying, Transcript 102;

perjury—conspiracy—fraud, <u>Ohio Criminal Statute §2921.11(A) and 42 U.S.C. § 1985(3)</u>.   Ms

Miller testifies as follows:   "They had me come to the door.   They said they thought they had

him and they wanted me to ID him.   So they shined the flashlight in his face and I said yeah,

that's him", Transcript 28.   The United States Supreme Court in <u>United States v. Wade 388 U.S.</u>

<u>218 (1967)</u> forbids the state from dragging a potential suspect in a one-on-one on scene

identification in front of a traumatized witness and telling them—they had caught him and

wanted them to ID him.   Then any pretrial identification made without the presence of counsel is

inadmissible at trial, <u>Moore v. Illinois, 434 U.S. 220, 231 (1977)</u>.   Any and all evidence and/or

testimony relating to Mr. Engle's Drivers License, State's Exhibit #12; Mr. Engle's social

security card, State's Exhibit #13; and, Mr. Engle's school backpack, State's Exhibit #14; and,

any and all evidence and/or testimony relating to Mr. Engle's apprehension and one-on-one on

scene identification is immune under the <u>Fourth Amendment</u> and inadmissible under the <u>Fifth</u>

<u>Amendment</u>, <u>Mapp v. Ohio, 367 U.S. 643, 655 (1961)</u>.

Detective Olinger testifies that the photographs (States' Exhibits one through eight) of which

seven were taken by him and one by an evidence technician, Transcript 143. The State does not

identify "this one" photograph or technician.   Detective Olinger took his photographs on March

26, 2007, and the technician took his on March 25, 2007, Transcript 144.   Mr. Engle requests

judicial notice pursuant to <u>Ohio Evidence Rule 201</u> the photographs show a date of April 26,

2007, Transcript 244.   Office Chad Knedler testifies that the time he was there it was nighttime;

but, that the photographs (States' Exhibits one through eight) appear to be all in the daytime,

Transcript 89-90.   Detective Olinger's hand is in one of the photographs, Transcript 145.   This

- 24 -

alleged crime happened on March 24, 2007 (doc. #1).  What happened on March 25 or 26, 2007, is irrelevant and inadmissible, Ohio Evidence Rule 402; Beech Aircraft Corp. v. Rainey, 488 US. 153 (1988)—prejudicial and confusing—Ohio Evidence Rule 403; Brady v. United States, 397 U.S. 742, 748 (1970).  Mr. Engle should not have been forced to argue what happened on the 25 and the 26 of March and April of 2007. It is beyond the scope of inquiry and it shifts the burden of persuasion to Mr. Engle, in violation of, Patterson v. New York, 432 US 197, 201 (1977). The daytime photographs are optical illusions—that enhances and supports Prosecutors John C Amos' perjury—fraud—conspiracy, supra and infra.

Mr. Carl Goraleski assures the Petitioner he will file the Notice of Appeal, Transcript 259.   July 26, 2007, while the Petitioner stood mute, the trial court ignored the Fifth Amendment prohibition against double jeopardy, and sentenced Petitioner to maximum consecutive sentences and sentenced the Petitioner beyond the scope of legislative jurisdiction.  The trial court once again assures the Petitioner his direct appeal would be filed, Sentencing Transcript 3.

October 17, 2007, filed Pro Se Writ of Mandamus with the Montgomery County Court of Appeals; Pro Se Notice of Appeal; the Court of Appeals separates said Writ and Denies said Mandamus alleging it must be an original action and due to form even though said Motion was filed on a Prison form, and the Court of Appeals lacked the jurisdiction to do this—to grant the Notice of Appeal and deny the Mandamus; when, the Notice of Appeal was an appendix of the Mandamus.  January 30, 2008, Pro Se appeals the denial of the Mandamus to the Ohio Supreme Court in Case No.:  08-0235.  The denial of said Pro Se Writ of mandamus denies Petitioner of his United States Constitutional Amendments First, Fourth, Fifth, Sixth, and Fourteenth; and, judicially admits that the legal assistance provided to Pro Se litigants is ineffective.

January 14, 2008, Appointed Counsel for the sole purpose of Case No.: 22455.

February 24, 2008, Notified of Termination Entry of September 19, 2007.  April 24, 2008, Pro Se Petition for Writ of Mandamus/Prohibition, Case No.: 07-10511:   (1) Court Lacks jurisdiction; (2) violates ex post facto; (3) fast and speedy violation; and (4) lack of notice.  April 30, 2008, Impeachment, Judge, John W. Kessler, Termination Entry, September 19, 2007.

May 19, 2008, Court Appointed Counsel files Brief: (1) failed to obtain valid waiver of counsel; (2) failed to provide sufficient evidence to prove guilt beyond a reasonable doubt, and jury verdict is manifest miscarriage of justice; (3) Show-up identification unduly suggestive and unfairly prejudicial; (4) Court failed to adhere to statutory sentencing guidelines.  July 24, 2008, Filed Pro Se Supplemental Brief:  (1) Vindictive Prosecution; (2) Denial of Impartial Judge. August 26, 2008, Pro Se Supplemental Brief struck from the record.  October 14, 2008, Pro Se Petition for Writ of Mandamus/Prohibition, Case No.:08-6937:  (1) Denial of United States Constitutional Amendments First, Fourth, Fifth, Sixth, and Fourteenth due to the denial of filing Pro Se Supplemental Brief; (2) Ineffective Assistance of Appellate Counsel.  January 30, 2009, Articles of Impeachment:  (1) Denial of United States Constitutional First Amendment; (2) Judicial admission of innocence; and, (3) Gerstein violation and perjury.

On April 17, 2009, State of Ohio v. Raymond Engle, Case No.: 22455, Reversed and Remanded, issue (1) failed to obtain a valid waiver of counsel. Appellate Court Judges James A. Brogan, Mike Fain; and, Thomas J. Grady judicially admits to Court Appointed Counsel's issues; but, rules all but issue one as moot page 11; then, maliciously ignores Petitioner's Pro Se issues.

April 29, 2009, Returned to Montgomery County Jail.  April 30, 2009, Trial court holds hearing and denies Pro Se Petitioner the right to file pretrial motions.  May 5, 2009, Mandatory Judicial Notice of Adjudicative Fact dropped in the Montgomery County Jail's mail: (1) Due to the explicit language of the United States Constitutional Amendments Fifth and Fourteenth the trial

court lacked the jurisdiction to proceed further in the case sub judice.  May 8, 2009, Returned to Lebanon Correctional Institution.  May 13, 2009, filed Informal Complaint about missing legal work with Lieutenant Tabor.  During the Months of May, June, and July Petitioner did more than 70 days in isolation due to another inmate stealing Petitioner's fan while he took a shower and Petitioner attacked an inmate due to mental stress and belief that this was another harassment tactic by state agents.

On May 24, 2009, Petitioner filed a Petition for Writ of Mandamus with the United States Supreme Court and officially informed Mr. Patrick J. Leahy of Petitioner's burdens.  The Petitioner also wrote President Barack Obama and informed him of Petitioner's encounter of being denied access to court to quote: "'the only justice is this system is 'just us' MF(ers) doing time".

On May 28, 2009, proceeding Pro Se Mr. Engle filed several pretrial Motions, infra.  On June 19, 2009, Judge Mary Wiseman without giving Complainant Notice and/or an Opportunity to respond dismissed all said motions except those pertaining to discovery.  With all faith and credibility lost in Montgomery County's Judicial System, Complainant allowed Court Appointed Public Defender Carl Goraleski to represent him, and on September 4, 2009, Complainant pleads No Contest to Burglary.  On September 18, 2009, proceeding Pro Se Complaint filed his Notice of Appeal; but, on October 6, 2009, while trying to obtain the full record for appellate review Complainant was told he would have to pay for said record or file for the appointment of indigent counsel, infra.  After several conversations, both phone and personal, Court Appointed appellate counsel, Gary C. Schanengold, files an Anders brief; then, on January 8, 2010, Magistrate Judge, Ronald E. Mount Orders this Pro Se Complainant to file a Pro Se Brief within 60 days or said matter would proceed  to merit without said brief.  This is conspiracy—fraud to

deny said Complainant of the full record for review and in turn denying Complainant of bringing forward said issues, infra and supra, to conceal the maliciously State Agents acts that lack fidelity, integrity, or bravery and are snowballing Complainant's issues into greater liability and additional Respondents.

DENIAL OF FIRST AMENDMENT/
LACK OF JURISDICTION DUE TO JUDICIAL ADMISSIONS—PERJURY—FRAUD—
CONSPIRACY

There are no finger prints, blood; or, DNA in this case, Transcript 164 and 168. Ms Miller wrote a statement, Transcript 37; that Petitioner never received during discovery; which was requested in Discovery. Ms Miller can not recall whether or not she locked her front door, Transcript 18; this is the reason it is alleged that an intoxicated suspect climbs up the back of a two story residence; and, there are two ladders in Complainant's back yard, which the State judicially admits it does not know if said ladders were used, Transcript 146; In effect—judicially admitting—that the State's theory on Complainant climbing up the back of the residence is just a guess. Ms Miller can not recall if it was raining, Transcript 29-30. Ms Miller alleges that Detective Olinger came out to her house that night, Transcript 30. Ms Miller alleges that her alleged attacker attacked her on the 26th, Transcript 34. Petitioner was arrested on the 24th, see indictment, Doc. # 1. Ms Miller testifies she did not smell alcohol or notice her attacker being soaked from it raining, Transcript 81. It was raining that night from 2:13 a.m. until 2:56 a.m., Transcript 74. Ms Miller's alleged attacker attacked her around 2:30 a.m., Transcript 51. Mr. Engle was intoxicated, clothes were disarray, strong order of alcohol on his person and his eyes were bloodshot, Transcript 123. Mr. Engle was not complying initially, appeared very intoxicated, and didn't appear to understand our commands to put his hands behind his back. And we assisted and put his hands behind his back. I believe he was highly intoxicated—

incoherent, Transcript 128-29. Mr. Engle's clothes were wet, Transcript 79 and 115. Ms Miller lived on the corner of Torrence and Bierce from 1996 until 2004, Transcript 58. Ms Miller at the time of her alleged attack lived at 58 Bierce, Transcript 24. Mr. Engle lived at 54 Bierce, Transcript 99, off and on for 40 years, Transcript 189; next door to Ms Miller, Transcript 146. Yet, Ms Miller proclaims to have never seen Mr. Engle, Transcript 35. Ms Miller testifies: years ago someone had told her something about Mr. Engle, Transcript 36. Ms Miller swears under oath that she does not know Mr. Engle and/or speak to him in passing, Transcript 35 and 61. Ms Miller alleges she could see in the light, transcript 48, and that a reflection is off the streetlamp on the Northwest corner of Torrence and Bierce, Transcript 57. The State's photographs, id, prove there are no lights on in Ms Miller's apartment and there is no streetlamp across the street from Ms Miller's apartment building. Mr. Engle's reaction to Ms Miller's allegations of that— there is a street lamp across the street from Ms Miller's apartment is: "I don't think so, Ms Miller", Transcript 57. Ms Miller also admits to wearing glasses and not having them on that night, Transcript 62. It should also be noted that Ms Miller alleges her attacker damaged the gutter spouting, Transcript 25. Yet, to see this damage one MUST be in the back yard—to see said gutter spouting damage. Ms Miller admits to never having been in the back yard, Transcript 62.

Mr. Engle was denied witnesses, Transcript 186-87; Mr. Engle endured the suppression of evidence that would prove Detective Olinger, Officer Stephen Clark, Officer Chad Knedler, and Ms Miller to be liars, Transcript 215-18. It should be judicially noted that one of the excuses Judge Kessler uses to deny Petitioner the right to submit evidence into the record is that a newspaper article is not admissible; but, Ohio Rules of Evidence, Rule 902 (emphasis supplied). Self-Authentication; Extrinsic evidence of authenticity as a condition precedent to admissibility

is not required with respect to the following: (6) Newspapers and periodicals. Printed materials purporting to be newspapers or periodicals, including notices and advertisements contained therein. Then Mr. Engle was asked if he filed a complaint, Transcript 209. The record reflects that the Ohio Supreme Court refused to file his Mandamus action, id; and the trial court denied said Mandamus when it did not posses the jurisdiction to do so, and failed to give Petitioner Notice and an Opportunity to respond, id; and, the case sub judice in toto proves an Indigent Pro Se Litigant is not going to be allowed any consideration in voicing an honest complaint against said State Agents, infra and supra

<u>DOUBLE JEOPARDY DUE TO JUDICIAL ADMISSION OF INNOCENCE</u>:

Due to the explicit language of the <u>Fifth Amendment</u> Trial Court Judge Mary Wiseman was without the jurisdiction to retry Mr. Engle, <u>Green v. United States, 355 U.S. 184 (1957)</u>; <u>Burgess v. United States, 553 U.S. 124 (2008)</u>.  "The State is not in a position to proceed with any degree of prosecution based upon the evidence, evidentiary rulings; and, to call any other witnesses would be absolutely futile," <u>Malinovsky v. Court of Common Pleas of Lorain County 6th Ohio 1993, 7 F.3d 1263, Cert.den, 114 S.Ct. 1300</u>. The <u>Fifth Amendment</u> in pertinent part:  "No person shall be place in jeopardy of life or limb for the same offense twice, <u>United States v. Ball, 163 U.S. 662 (1896)</u>.  Through judicial admission the State of Ohio admits the evidence presented at Mr. Engle's first trial was insufficient to prove guilt beyond a reasonable doubt, <u>Jackson v. Virginia, 443 U.S. 307, 309 (1977)</u>, where prosecutor John C Amos judicially admits: "When the ability of the other person to resist is substantially impaired because of a physical state or condition…and not argued to you, Transcript 227, an element of Mr. Engle's charge (Doc. #1, Mr. Engle's Indictment) mandating that the Court enter a judgment of acquittal, <u>Burks v. United States, 437 U.S. 1, 5-18 (1978)</u>.  Therefore, the State of Ohio may not subject Mr.

Engle to the anxiety, cost, or probability of being found guilty when innocent, <u>Green v. United States, 355 U.S. 184, 187 (1957)</u>, when there exist proof of a judicial admission on the face of the record that the State of Ohio is barred to retry Mr. Engle and/or subject Mr. Engle to any type of incarceration and/or impose any impediment upon Mr. Engle's freedom due to an insufficient evidence claim and the <u>Fifth Amendment</u>'s Double Jeopardy Clause, <u>Malinovsky v. Court of Common Pleas of Lorain County 6th Ohio 1993, 7 F.3d 1263, Cert.den., 114 S.Ct. 1300</u>.

<u>DOUBLE JEOPARDY:  PETITIONER BEING SENTENCE<br>TO CONSECUTIVE SENTENCES FOR ALLIED OFFENSES</u>.

Sentencing Transcript—July 26, 2009:  The <u>Fifth Amendment</u> Double Jeopardy test for greater than—less than included offenses is <u>Blockburger v. United States, 284 U.S. 299, 304 (1932)</u>. This test is satisfied due to judicial admission where in Document Number one (Mr. Engle's Indictment) ID at Count I the burglary is committed to commit GSI—which is Count II. The <u>Fifth Amendment</u> Double Jeopardy prohibition to being sentenced to consecutive sentences for greater than—less than offenses is <u>Rutledge v. United States, 517 U.S. 292 (1996)</u>, and due to the explicit language of <u>Ohio Criminal Statute §2945.75 (A) (B); State v. Brooke (2007) 113 Ohio St.3d 199, 201</u>and <u>Ohio Criminal Statute §2929.14</u> reenacted January 1, 2009 via way of <u>HB 130</u> and the fact Mr. Engle's Indictment (Doc. #1) dose not charge or allege an enhancement element the trial court (or any other court) lack the jurisdiction to consider an enhancement element, <u>Carey v. Piphus, 435 U.S. 247 (1978); United States v. Sisson, 399 U.S. 267 (1970); State v. Brooke (2007) 113 Ohio St.3d 199, 201</u>, and for the trial court to have sentenced Mr. Engle to any sentence greater than two years exceeded its jurisdiction, <u>Ex parte Wilson, 114 U.S. 417 (1885)</u>, and abuses its discretion, <u>State v. Adams (1980) 62 Ohio St.2d 151, 157</u>; in that, "the court's attitude was and/or is unreasonable, arbitrary or unconscionable".   Complainant's indictment, id, admits to allied offenses ((doc. #1, case # 07CR1128) id at Count I "the Burglary

- 31 -

is committed to commit GSI—which is Count II)) and Mr. Engle can show prejudice where on July 26, 2007, Mr. Engle was sentenced for allied offenses to consecutive sentences in violation of the Fifth Amendment's Double Jeopardy Clause of the United States Constitution.  Sentencing Transcript page 3, (July 26, 2007), and said surplusage in Mr. Engle's indictment was prejudicial, confusing, and caused undue delay, Ohio Evidence Rule 403; Brady v. United States, 397 U.S. 742, 748 (1970).  Petitioner requests judicial notice of the fact that Count II has been nollied, id; furthermore, jurisdiction can not be waived and can be raised at any time; and, the trial judge, nor the prosecution possessed the jurisdiction to amend Petitioner's indictment, State v. Colon (2008) 118 Ohio St.3d 26; nor, does this satisfied Notice and an Opportunity to respond, infra.

. LACK OF JURISDICTION—CLAIM PRECLUSION—FAILURE TO NOTIFY

Mr. Engle's indictment does not allege an enhancement element; and, a definition such as Ohio Criminal Statute §2945.75 that declares what a term "means" … excludes any meaning that is not stated. E.g. Colautti v. Franklin, 439 U.S. 379, 392-393, n 10.  Mr. Engle's indictment (doc. #1) judicially admits through omission that Mr. Engle has not been served or designated as a party, Richards v. Jefferson County Ala, et al 517 U.S. 793 (1996), to either an enhancement element or sexual predator element and due to the explicit language of Ohio Criminal Statute §2945.75(A)(B); Carey v. Piphus, 435 U.S. 247 (1978); State v. Brooke (2007) 113 Ohio St.3d 199, 201;and Ohio Criminal Statute §2929.14 reenacted January 1, 2009 via way of HB 130 the State of Ohio lacks the jurisdiction to consider said elements, Burgess v. United States, 553 U.S. 124 (2008); State v. Brooke (2007) 113 Ohio St.3d 199, 201.  Mr. Engle's Indictment (doc. #1) does not charge or allege an enhancement element or sexual predator element and the trial and/or appellate Courts lacked the jurisdiction to consider said elements, United States v. Sisson, 399 U.S. 267, 311 (1970); State v. Brooke (2007) 113 Ohio St.3d 199, 201.  During Mr. Engle's state

trial proceedings the State of Ohio did not present via way of indictment (doc. #1) or via way of testimony or any other evidence (Case No.: 2007CR1128) proof beyond a reasonable doubt, Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004), of an enhancement element or sexual predator element and the State of Ohio was barred to litigate such issues due to the rule of claim preclusion, Taylor v. Struggell, 128 S.Ct. 2161, 2173 (2008). Therefore, the court lacked all subject matter jurisdiction, United States v. Sisson, 399 U.S. 267, 311 (1970); and, ignored this jurisdiction to impose vindictive and malicious sanctions upon the Complainant, id.

Judge John W. Kessler on **September 19, 2007**, judicially admits in his Termination Entry of Case No.: 2007CR1128 that the sexual predator element did not take effect until **January 1, 2008**. Mr. Engle did not learn of the trial court's action until February 24, 2008, when the Court of Common Pleas of Warren County served Notice upon Mr. Engle and gave him 90 days to object. Mr. Engle filed Case No.: 07-110541 with the United States Supreme Court alleging the violation of Notice and the Opportunity to respond, Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985); Article 1 § 10, cl. 1—Ex Post Facto— Bouie v. City of Columbia, 378 U.S. 347, 362 (1964) —Res Judicata—Collateral estoppels—Bell Atlantic Corp. v. Twomby, 127 S.Ct 1955 , 1969 (2007) , and the Fifth Amendment's Double Jeopardy Clause, United States v. Ball, 163 U.S. 662 (1896), and now claim preclusion, Taylor v. Sturgell, 128 S.Ct. 2161, 2173 (2008). It should be judicially noted that all allegations pertaining to this issue have been dismissed against the Petitioner, Sentencing Transcript 4 (September 3, 2009); but, these allegations are still a matter of public record, See:   http://www.clerk.co.montgomery.oh.us (public records search by case number 07cr1128), conspiracy, fraud, slander; and, defamation, supra and infra. The essence of libel per se is the publication in writing of false statements that

tend to injure a person's reputation. By the very nature of harm resulting from defamatory publications, it is frequently not susceptible of objective proof. Libel and slander work their evil in ways that are invidious and subtle." 1 F. Harper & F. James, Law of Torts § 5.30, p. 468 (1956); see also Restatement of Torts § 621, comment a, p. 314 (1938). The essence of slander per se is the publication by spoken words of false statements imputing to a person a criminal offense, a loathsome disease, matter affecting adversely a person's fitness for trade, business, or profession, or serious sexual misconduct, 1 F. Harper & F. James, Law of Torts §§ 5.9-5.13 (1956); Restatement (Second) of Torts §§ 558, 559, 569-574 (1977); W. Prosser, Law of Torts § 112 (4th ed.1971), Carey v. Piphus, 435 U.S. 247, 262 (1978).   Mr. Engle's Indictment, id, judicially admits through omission that all said State Agents lacked and/or lack the jurisdiction to disseminate, circulate, reiterate, or publish such slanderous and defamatory allegation.

Mr. Engle would request judicial notice of the fact that Public Defender Carl Goraleski and Judge John W. Kessler assured Mr. Engle that an appeal would be filed in his behalf, id; but, the record reflects that Mr. Engle had to file a Pro Se Petition for Writ of Mandamus action (incorporated in Case No.: 22455) to ensure that his appeal began on October 17, 2007, id.  It is now alleged that the action on the parts of Public Defender Carl Goraleski; Judge John W. Kessler; and, Assistant Prosecutor John C. Amos was to wait until the time for Mr. Engle to appeal had elapsed and then attack Mr. Engle with such slander and defamation as is written in the September 19, 2007, Termination Entry which is judicially admitted to have being beyond the trial court's jurisdiction, id, for no other purpose than to character assassinate Petitioner in the beliefs of their peers and/or superiors; and, to conceal their indiscretions.

STATE AGENTS ARE MALICIOUSLY DECLINING TO ADDRESS MR. ENGLE'S
GRIEVANCES IN VIOLATION OF THE 1ST, 4TH, 5TH, 6TH, 7TH, 8TH, 13TH, AND 14TH USCA
CONSTITUTIONAL AMENDMENTS DUE TO HIS ISSUES.

Respondents are refusing to address Complainant's issues due to the fact that they can not win through righteous litigations and have resorted to denying Complainant access to court to ensure Complainant does not advance his Pro Se indigent issues.  On April 17, 2009, the Second District Court of Appeal for the State of Ohio, Montgomery County judicially admits in its Opinion that Mr. Engle attempted to present an insufficiency of evidence claim; a claim against the show-up and one-on-one on scene identification; and, claim against being sentenced beyond the scope of judicial jurisdiction, id @ 10; but, refused to address said claims due to moot ness, id @ 11.  In re Oliver 333 U.S. 257 (1948), the United States Supreme Court made it mandatory for State Courts to afford its constituents Procedural Fairness and an opportunity to be heard. Issues in this case, infra and supra, are being ignored for no other purpose than to prevent a judgment in violation of the First Amendment and Fourteenth Amendment,  and a direct violation of Bounds v. Smith, 430 U.S. 817, 824, 828 (1977).  Mr. Engle is entitled to an impartial judge and/or judges, Chapman v. California, 386 U.S. 18 (1967) and a reasonable determination of the facts in an unbiased light of the evidence presented.  Williams v. Taylor, 529 U.S. 362, 402-03 (2000).

 Mr. Engle would request judicial notice of this Court that jurisdiction can not be waived and can be raised at anytime, State v. Colon (2008) 118 Ohio St.3d 26.  Mr. Engle's case, id, was reversed and remanded on April 17, 2009, id.  The language of the Eight and Thirteenth Amendments is explicit. Cruel and unusual punishment shall not exist within the United States; nor shall slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States.  A party should be granted immediate right to review when harm sought to be reviewed is both extreme and irreparable and for no other purpose than to prevent a judgment, First Amendment, In re Oliver, 333 U.S. 257,

273 (1948). The judgment entry of April 17, 2009, admits Mr. Engle's case was reversed and remanded. Relieving Mr. Engle of all stigmas of guilt, and the State's action is…to chill the assertion of constitutional rights by penalizing those who choose to assert them. Shapiro v. Thompson, 394 U.S. 618, 631 (1969); United States v. Jackson, 390 U.S. 570, 581 (1968). First Amendment in pertinent part: Congress shall make no law abridging…freedom of speech…or the right of the people…to petition the Government for redress of grievances, Bounds v. Smith. 430 U.S. 817, 824, 828 (1977). There is neither a full and fair remedy for adjudication a federal claim, or because of Mr. Engle's issues this process for adjudication of said federal claim is unavailable or seriously inadequate, Ex parte Hawk, 321 U.S. 114, 118 (1944); State of Ohio v. Raymond Engle, April 17, 2009, 2009 Ohio 1944; In re Raymond Engle v. Strickland, Case No.: 07-10541; In re Raymond Engle v. Michael Columbus, Case No.: 08-6937; State of Ohio v. Raymond Engle (2009) 122 Ohio St.3d 1505; State of Ohio v. Raymond Engle, 2007cr1128. When Prosecutor John C Amos states plainly, clearly, and concisely: "When the ability of the other person to resist is substantially impaired because of a physically state or condition…and…not argued to you" Transcript 227; Mr. Engle must be adjudicated innocent, Jackson v. Virginia, 443 U.S. 307, 309 (1977). This judicial admission, United States v. Sisson, 399 U.S. 267, 285 (1970); Oscanyan v. Winchester Repeating Arms Company 103 U.S. 261, 263 (1880), that an essential element was not argued to the jury and proven beyond a reasonable doubt, Jackson v. Virginia, 443 U.S. 307, 309 (1977), mandates that the court enter a judgment of acquittal, Burks v. United States, 437 U.S. 1, 18 (1978).

On May 26, 2009, Mr. Engle filed an appeal in the Supreme Court of Ohio, Case No.: 09-0954; State of Ohio v. Raymond Engle (2009) 122 Ohio St.3d 1505. In Mr. Engle's Memorandum in Support of Jurisdiction Mr. Engle sets forth the claim: "Why This Case Involves Constitutional

Issues That Calls for This Court's Supervisory Intervention", Id @ 2.  Mr. Engle goes on to assert the following claims:  (1)  Reversal and remand correct for invalid waiver of Counsel; but, denies Petitioner of U.S.C.A. Const. Amend(s) I and V by not proceeding to judgment on remaining issues; (2) Insufficient evidence, specific intent, voluntary intoxication, and manifest miscarriage of justice; (3) The show-up identification and photo spread unduly suggestive and unfairly prejudicial; (4) Court erred by failing to adhere to statutory sentencing guidelines; and, (5) Ineffective assistance of appellate counsel.

In the first proposition Mr. Engle argues that double jeopardy can be sufficient extraordinary circumstances to allow review and cites Benson v. Superior Court Dept of Trial Court of Mass (CA1, 1981) 663 F.2d 355; and, full and fair consideration of the remaining issues would have conclusively determined the disputed issues Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949), via judgment of acquittal, Burks v. United States, 437 U.S. 1, 18 (1978) id @ 3.

The Second proposition—Mr. Engle sets forth the facts in the case alleges that he climbed up the back of the residence and entered through a second story kitchen window, Transcript 87.  Yet! Petitioner was highly intoxicated, couldn't respond to simple commands like walk, put your hands behind your back; blood shot eyes; alcohol smell emanating from his body and breath; and, didn't make sense because he was incoherent, Transcript 128-29.  See Jackson v. Virginia 443 U.S. 307, 309 (1979), id at 3-4.

Within the third proposition Mr. Engle argues that Detective Olinger admits no other suspect in the lineup had on such a shirt, Transcript 157.  Ms Miller testifies that: "They had me come to the door.  They said they thought they had him and they wanted me to ID him.  So they shined the flashlight in his face", Transcript 28.  The State's judicial admission of the discrepancy of

color of shirt, Transcript 199 and cites:  Moore v. Illinois, 434 U.S. 220, 231 (1977); United States v. Wade, 388 U.S. 218, 224 (1967); Stovall v. Denno, 388 U.S. 293, 302 (1967), id at 4.

In the Fourth proposition Mr. Engle argues the judicial admission of allied offenses, Doc. #1; State's Brief 12 and exceeds statutory maximum, citing Benton v. Md., 395 U.S. 784, 785 (1969); Ohio v. Johnson, 467 U.S. 493, 498-99 (1984); Blockburger v. United States 284 U.S. 299, 304 (1932); State v. Brooks 113 Ohio St.3d 199, 201(2007); and, U.S.C.A. Const. Amend(s) I, V, XIV, id at 5.

The fifth proposition was that of ineffective assistance of appellate counsel.  The Sixth Amendment and Strickland v. Washington, 466 U.S. 668 (1984) ensures counsel; and, this ensured counsel has been extended to appellate counsel, Penson v. Ohio, 488 U.S. 75, 85 (1988). Prosecutor John C Amos on July 24, 2007, states plainly, clearly, and concisely:  "When the ability of the other person to resist…and not argued to you," Transcript 227; an essential element of Petitioner's charge.  See Doc. #1.  This judicial admission, Ornella v. Robertson (1968) 14 Ohio St.3d 144; United States v. Crawford CA 9, 2004, 372 F.3d 1048; Oscanyan v. Winchester Repeating Arms Company,   103 U.S. 261, 263 (1880), proves an essential element to prove Petitioner's guilt beyond a reasonable doubt, Jackson v. Virginia, 443 U.S. 307, 309 (1979) is missing—which, mandates this Court enter a judgment of acquittal, Burks v. United States, 437 U.S. 1, 18 (1978).

On September 17, 2007, without notice and opportunity to respond, Cleveland Bd of Educ. v. Loudermill, 470 U.S. 532, 541 (1985), the trial court imposed sanctions upon the Petitioner that violated res judicata, collateral estoppel, and prohibited by the doctrine of claim preclusion, Bell Atlantic Corp. v. Twombly, 127 S.Ct 1955 , 1969 (2007); Taylor v. Sturgell, 128 S.Ct. 2161, 2173 (2008); and, was a gross violation of the prohibition against double jeopardy, Green v.

United States, 355 U.S. 184, 187 (1957); Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003).

This imposition included a judicial admission that this burden upon the Petitioner did not take

effect until January 1, 2008 due to the fact that this legislation did not take effect until then.

Detective Olinger doesn't recall when he went over pre-interview form, Suppression Hearing 20.

Interview that took place is accurately written in Detective Investigation Product...Suppression

Hearing 25.  I did go over the suspects CCH with him at the end of the interview, Detective

Investigation Product 5.  Detective Investigation Product excluded from the record, Transcript

215-217.  Detective Investigation Product which was affirmed under the Testimony of Detective

Phillip Olinger to be a true and correct document alleges that Ms Miller's attacker wore a white

t-shirt with black sleeves.  That Detective Olinger went over Miranda warnings at the end of the

interview.  Petitioner argues the State's refusal to assist a Pro Se indigent defendant in exercising

his Sixth Amendment Compulsory Clause to assist in his presentation of a defense, Washington

v. Texas, 388 U.S. 14, 19 (1967), and Sixth Amendment Confrontation Clause, Pointer v. Texas,

380 U.S. 400 (1965), further proves and enhances Mr. Engle's complaint of conspiracy.

Officer Knedler found backpack with property inside, ID inside wallet, Suppression Hearing 8.  I

found social security number with Raymond Engle on it, Suppression Hearing 9.  Social security

number was in the bag, Suppression Hearing 9.  Officer Knedler: Backpack with a brown wallet

and a watch all lined up, setting on the porch, Transcript 95.  I looked inside the wallet and saw a

social security card, Transcript 95.  The wallet was not in the bag, Transcript 96. Incident search

may not precede an arrest and serve as part of it justification, Sibron v. New York, 392 U.S. 40,

63 (1968).  Police may detain property but they may not search it, Smith v. Ohio, 494 U.S. 541,

542-543 (1990).

Officer Knedler writes:  Ms Miller said suspect had light colored bread, Detective Investigation Product 3.  Officer Knedler at the suppression hearing testifies that Ms Miller said it was an older gentleman with gray stubbles, Suppression Hearing 7.   Petitioner requests and is denied witnesses, Transcript 186-87.   Witness perjures himself when he gives false testimony as to matter with willful intent to provide false testimony, United States v. Dunnigan, 507 U.S. 87, 94 (1992).  Prosecutor John C Amos knowingly used perjured testimony, Danforth v. Minnesota, 128 S.Ct. 1029, 1036 (2008); and, Judge John W Kessler deliberately denied Petitioner witnesses and/or suppressed evidence that was favorable to Petitioner, and Petitioner is entitled to release, Brady v. Maryland, 373 U.S. 83, 86 (1963); quoting, Mooney v. Holohan, 294 U.S. 103 (1935). USCA Const. Amend. IV; Gerstein v. Pugh, 430 U.S. 103 (1975); County of Riverside v. McLaughlin, 500 U.S. 45, 56 (1991) violation judicially admitted Doc. #1.

Prosecutor alleges allegation he can't prove, Transcript 5-6; misstates facts calls/infers Petitioner to be a liar, Transcript 201, 232; and, alleges victim's testimony is credible, Transcript 242. Prosecutor may not express personal opinion about the defendant's guilt or credibility, United States v. Smith 1st Cir. 1993, 982 F.2d 681, 689; or, state his witness is credible, United States v. Frances 6th Cir. 1999, 170 F.3d 546, 549.

With the Prosecution presenting perjured testimony, supra, and, the trial Judge violating Petitioner's Constitution right to present a defense, Transcript 64, 114, 186-87, 215-218, Washington v. Texas, 388 U.S. 14, 19 (1967), Suppression Hearing and trial was caustically laced with an alleged confession to the point where Petitioner called Detective Olinger a forger, Transcript 202-03, States Brief 6; and, knowing the Petitioner would win on the Miranda v. Arizona, 384 U.S. 436 (1966) violation—the State judicially admits there was no confession, Transcript 150, 244.

- 40 -

The State's Brief judicially admits artificial light is needed to see anything, id 15.  The illegal search and seizure of Petitioner by arresting officers, Suppression Hearing 7, 8, 9; and, Transcript 28, 88, 89, 95, 96, 127, 129, mandates that said evidence must be excluded, <u>Mapp v. Ohio, 367 U.S. 643, 655 (1961)</u>.   Police had no lawful right to said evidence, <u>Horton v. California, 496 U.S. 128, 135-136 (1990)</u>; and, said evidence was not evidence of a crime, <u>Arizona v. Hick, (1967) 480 U.S. 321, 322 (1987)</u>.

Refused right to give jury instructions, Transcript 257, <u>Keeble v. United States, 412 U.S. 205 (1973)</u>.  It is the duty of the trial court to control the argument of counsel and to see that it is confined to proper limits…Failure to do so constitutes prejudicial error…This is especially the case where the trial court allows the argument to stand without instructing the jury to disregard it, <u>Herman v. Teplitz (1925)113 Ohio St. 164</u>.  The prosecutor's duty in a criminal prosecution is to seek justice, <u>Berger v. United States,  295 U.S. 78, 88 (1925),</u> overruled on other grounds by <u>Stirone v. United States, 361 U.S. 212 (1960)</u>.  Therefore, the prosecutor should, "prosecute with earnestness and vigor"; but, May not use, "improper methods calculated to produce a wrongful conviction."  If the use of such methods "so infects the trial with unfairness as to make the resulting conviction a denial of due process" it may justify a mistrial or reversal of conviction, <u>Darden v. Wainwright  477 U.S. 168, 181 (1986)</u>; quoting, <u>Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)</u>.

In Concluding Mr. Engle argues the following:  Considering the case sub judice in toto, this Court must rule Appellate Counsel as ineffective for not bringing forward meritorious Federal Constitutional claims; and, the Court of Appeals as having abused its discretion by not addressing the remaining merits in the case. Petitioner has won a new trial, <u>State of Ohio v. Engle, 2009-Ohio-1944</u>; and, it is common knowledge a person is presumed innocent until

proven guilty.  Therefore, the burden lies with the State of Ohio to explain why an innocent man

sits in prison in violation of USCA Const. Amend(s) <u>Eight and Thirteen</u>. Furthermore, due to the

explicit language of USCA Const. Amend(s) <u>Five and Fourteen</u>, the State of Ohio lacks the

jurisdiction to place Petitioner in jeopardy for the same offense twice.  Wherefore, the Petitioner

duly prays this Court will reverse Petitioner's case and discharge Petitioner.

<u>KNOWING AND/OR SHOULD HAVE KNOWN PETITIONER'S ISSUES, PETITIONER
WAS COERCED TO PLEA NO CONTEST; AND, SAID STATE AGENTS ARE
ATTEMPTING TO USE THIS COERCIVE TACTIC TO DENY PETITIONER OF
PRESENTING HIS ISSUES IN VIOLATION OF THE 1ST, 4TH, 5TH, 6TH, 8TH, 13TH, AND 14TH
AMENDMENTS OF THE UNITED STATES CONSTITUTION.  THROUGH JUDICIAL
ADMISSION NEITHER THE TRIAL COURT NOR THE COURT OF APPEALS HAVE
AND/OR HAD JURISDICTION TO IMPOSE SANCTIONS UPON THE PETITIONER—
EXCEPT A JUDGMENT OF ACQUITTAL.</u>

On April 21, 2009, Petitioner was returned to Montgomery County Jail from Lebanon

Correctional Institution.   May 11, 2009, Petitioner filed Mandatory Judicial Notice of

Adjudicative Facts.  May 13, 2009, Petitioner was transported back to Lebanon Correctional

Institution from Montgomery County Jail.  May 18, 2009 Trial Judge Mary Wiseman overruled

Mandatory Judicial Notice.   On May 24, 2009, Petitioner dropped a Petition for Writ of

Mandamus/Prohibition in Lebanon Correctional Institutional mail.  On May 28, 2009, Petitioner

proceeding Pro Se filed the following Motions with the Court of Common Pleas in Case No.:

<u>2007CR1128</u>:  (1) Motion to Dismiss 2; (2) Motion to Dismiss 1; (3) Motion to Suppress

Evidence; (4) Written Request for Witnesses and Documents; (5) Return of Personal Property;

(6) Severance of Charges; (7) Motion for Discovery; (8) Motion to Dismiss 3; and, (9) Motion to

be Released on his Own Recognizance.  On June 19, 2009, the trial court overruled said Motions

and did not give Petitioner Notice or an Opportunity to Respond. (Petitioner would request

Judicial Notice that a Motion to Dismiss due to Double Jeopardy could have been appealed

immediately.)   August 20, 2009, Petitioner was transported from Lebanon Correctional

Institution to Montgomery County Jail.  Under the coercive and malicious tactics of Trial Judge

Mary Wiseman, Prosecutor John C Amos, and Public Defender Carl Goraleski, Petitioner Plead

No Contest on September 3, 2009. On September 18, 2009, Petitioner proceeding Pro Se filed:

(1) Notice of Appeal; (2) Motion For Full Transcript of Proceeding where in said document

Petitioner requested the following (a) Trial Transcript (July 23-24, 2007); (b) State's Exhibits 1

through 17; (c) Motion to Dismiss I ((May 28, 2009)(Pursuant to Ohio Crim.R. 48  and O.R.C. §

2945.15)); (d) Motion to Dismiss 2 ((May 28, 2009)(Pursuant to Ohio Crim.R. 48 and O.R.C. §

2921.11(A)); (d) Sentencing Transcript (September 3, 2009); and, (e) Full Transcript  for

appellate review; (3) Affidavit of Indigency; (4) Financial Disclosure/Affidavit of Indigency; and

(5) Criminal Docket Statement; Case No.:  23645.   At this time Petitioner would request

Mandatory Judicial Notice of the Criminal Document Statement id at History of Case where this

Pro Se litigant refused appellate counsel.  On October 6, 2009, while trying to obtain said records

in the Motion for Full Transcript of Proceeding, Petitioner was coerced to file a Motion for the

Appointment of Counsel or pay for said documents for appeal, id.  Indigent prisoners must be

allowed to file appeals and habeas corpus petitions without payment, See; Burns v. Ohio, 360

U.S. 252, 257 (1959); Griffin v. Illinois, 351 U.S. 12, 20 (1956); Bounds v. Smith, 430 U.S. 817,

824, 828 (1977); but, the record reflects Complainant is being maliciously denied the

Constitutional right to present his merited Constitutional issues by any means necessary, infra

and supra.  After several conversations with court appointed appellate counsel and under the

expectations of an Anders Brief, and court appointed counsel's refusal to obtain the full record

for appellate review, Court appointed counsel files an Anders v. California, 386 U.S. 738 (1967)

brief on December 15, 2009.  It should be judicially noted that Complainant cannot present said

Constitutional issue without the record (case cite omitted).  At this time Petitioner would request

- 43 -

judicial notice of:   The <u>Anders Brief</u> filed by Court Appointed Appellate Counsel.   Counsel alleges: "This Brief does not contain any Assignments of Error because counsel for Appellant has been unable to locate a viable issue on appeal"; and, "A review of the transcript demonstrates substantial compliance by the Trial Court with the requirements of <u>Rule 11</u> of the Ohio Rules of Criminal Procedure…id at 4; and, that certain constitutional rights would automatically be lost…the right to cross-examine accusers," id at 5.   Judge Mary Wiseman judicially admits: "[W]hich shouldn't be a problem since I don't think anybody knows where the victim is," id at 4 (Sentencing Transcript, September 3, 2009).   On page (7) seven Trial Judge Mary Wiseman judicial admits:  "And were not going to go over the community control sanctions piece of that"; but, Court Appointed Appellate Counsel alleges full compliance with Crim.R 11; and, on page (9) nine of the Sentencing Transcript (September 3, 2009) Petitioner requested to reserve his right to appeal; then, the Court goes on to elaborate as follows:  "Now, let me tell you a No Contest plea is not an admission of guilt.   But, it is an admission to the truth of the facts contained in the Indictment against you.   The No Contest plea itself may not be used against you in any other civil or criminal proceeding (emphasis added on verbal and written contracts)…

Mr. Engle's Motion to Dismiss 1 details the following:  Comes now the defendant, Raymond Engle, and moves this Court pursuant to <u>Ohio Crim.R. 48; and, ORC § 2945.15</u>; <u>Jackson v. Virginia, 443 U.S. 307, 319 (1979)</u>; and, <u>Burks v. United States, 437 U.S. 1, 18 (1978)</u>, for an Order dismissing this case, and does request a hearing on this matter.

Mr. Engle's Motion to Dismiss 2 details the following:  Comes now the defendant, Raymond Engle, and moves this Court pursuant to <u>Ohio Crim.R. 48; and, ORC § 2921.11(A);  Danforth v. Minnesota, 128 S.Ct. 1029, 1036 (2008)</u>; and USCA Const. Amends <u>I, VI, XIV</u>, for an Order dismissing this case, and does request a hearing on this matter.

Mr. Engle's Motion to Dismiss 3 details the following:  Comes now the defendant, Raymond Engle, and moves this Court pursuant to Ohio Crim.R. 48; USCA Const. Amends I, VI, XIV; and, Gerstein v. Pugh 420 U.S. 103 (1975); County of Riverside v. McLaughlin, 500 U.S. 45,56 (1991), for an Order dismissing this case, and does request a hearing on this matter.

Due to the findings of fact and conclusions of law, supra and infra, Complainant's No Contest Plea "a void judgment is no judgment at all and is without legal effect. Lubben v. Selective Service System Local Bd. No. 27 (1st Cir. 1972) 453 F.2d 645.  A party cannot be precluded from raising the issue of voidness in a direct or collateral attack because of the failure to object prior to, or at the time of, entry of the judgment.  Jordon v. Gilligan C.A.Ohio 1974 500 F.2d 701, 710.  The [Fifth] Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court . . ..' Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974).  Collateral estoppel is a branch of the preclusionary doctrine known as Res Judicata. The other branch is Claim Preclusion which bars re-litigation of the same cause of action between the same parties. Hicks v. De La Cruz (1977) 52 Ohio St.2d 71, 369 N.E.2d 776.  To attack a void judgment, the claimant must either appeal the decision of the court issuing the judgment, or bring an action under Ohio Civ. R. 60(B) to have the judgment set aside. Falk v. Wachs, 116 Ohio App.3d 716, 689 N.E.2d 71 (1996).  A void judgment may only be based upon, (1) lack of subject matter jurisdiction of the court issuing the judgment, (2) insufficient service of process, or (3) fraud/collusion by the party(s) obtaining the judgment. LaBarbera v. Batsch, 10 Ohio St.2d 106, 227 N.E.2d 55 (1967); Howard v. Cunard Line Ltd., 62 Ohio App.3d 285, 575 N.E.2d 489 (1988); Falk v. Wachs, 116 Ohio App.3d 716, 689 N.E.2d 71 (1996).  Trial Judge Wiseman conducting an ex parte trial ruled on Complainant's issues therefore, a final judgment based on the merits of the case and conforming to Ohio Civ.R. 54 and

58. See also <u>National Acceptance Co. of America v. Bathalter, 951 F.2d 349 (6th Cir.1991)</u>. Accordingly, this Court must find all (4) prongs of Ohio's collateral estoppel test has been satisfied, id. An ex post facto law has been defined as follows: " '1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes the action. 2d. every law that aggravates a crime, or makes it greater than it was, when committed. 3d. every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.' " <u>Miller v. Florida (1987), 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351, 359, quoting Calder v. Bull (1798), 3 Dall. (3 U.S.) 386, 390, 1 L.Ed. 648</u>. A law that violates the Ex Post Facto Clause of the United States Constitution is void, Miller, supra. A void judgment may be challenged at any time; See <u>Internatl. Lottery, Inc. v. Kerouac (1995), 102 Ohio App.3d 660, 665, 657 N.E.2d 820, 823</u>. A void judgment is a nullity. <u>Van DeRyt v. Van DeRyt (1966), 6 Ohio St.2d 31, 35 O.O.2d 42, 215 N.E.2d 698</u>. A void judgment "can be attacked by motion, on appeal, or collaterally without time restrictions," <u>In re Murphy (1983), 10 Ohio App.3d 134, 138, 10 OBR 184, 188, 461 N.E.2d 910, 915</u>; Moreover, this court has inherent power to vacate a void judgment, <u>Patton v. Diemer (1988), 35 Ohio St.3d 68, 518 N.E.2d 941</u>. A Petitioner must show two things to prove ineffective assistance of counsel: (1) that counsel was deficient and (2) that that deficiency prejudiced the Petitioner in some manner. <u>Strickland v. Washington, 466 U.S. 668 (1984)</u>, and this ensured effective assistance of counsel has been extended to appellate counsel, <u>Penson v. Ohio, 488 U.S. 75, 85 (1988)</u>. It is unimaginable that the Respondents could argue that a Petitioner knowing that his conviction relied on Lack of Jurisdiction, Perjury, Fraud, Conspiracy; and, an Abuse of Discretion; and, there exists a judicial admission of innocence on the face of the record that Petitioner would knowingly and intelligently waive his right to appeal and/or enter into a No

Contest plea under nothing less than Duress, Coercion, and/or Intimidation, id.  It is also inconceivable that an Attorney acting in the best interest of his client would allow that client to plea No Contest to any charges knowing the record clearly reflects the Prosecution, the Trial Judge, and the Public Defender (himself) were litigating for nothing less than a conviction to conceal their own indiscretions, id.  It is established that due process forbids convicting a defendant on the basis of a coerced guilty plea, United States v. Jackson, 390 U.S. 570, 582 (1968); of which Respondents held a personal interest in due to Complainant's Pro Se Indigent litigation against them, supra and infra, See United States v. Will, 449 U.S. 200, 213 (1980).  At this time, Petitioner requests judicial notice that Public Defender Carl Goraleski was the same attorney that failed to file Petitioner's Notice of Appeal that represented Petitioner at the No Contest Plea, id.  As there, here, Court Appointed Counsel has not fulfilled his obligation—; and, upon full review of Court Appointed Counsel's Anders Brief and the Sentencing Transcript (September 3, 2009) one must conclude that Court Appointed counsel is ineffective, participating maliciously, knowingly, and intelligently in this fraud to convict Petitioner by any means necessary; or, this is another incompetent action on the part of Court Appointed Indigent Counsel that has decided to protect the personal interest of guilty State Agents to do harm to this Complainant maliciously due to the request of Superiors.  Petitioner has fulfilled his obligation at preserving his Constitutional rights.  Petitioner only needed to fulfill one of four obligations to present said Constitutional issues to the State of Ohio's State Agents.  A Petitioner can take four actions in [his Pro Se Motion] which are significant to the determination as to whether a claim has been fairly presented: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific

constitutional right; or (4) alleging facts well within the mainstream of constitutional law. " See Levine v. Torvik, 986 F.2d 1506, 1516 (6th Cir.), cert. denied, 509 U.S. 907 (1993). Petitioner's did present his issues via three avenues of traversal: (1) Petitioner cited United States Court precedents employing constitutional analysis; and, (2) citing provisions of the United States Constitution; and, (3) said cited Ohio Criminal Rule and Statutes tells the reader the issue involved (e.g. §2945.15, insufficient evidence; §2921.11(A), perjury of a State Agent); yet, Petitioner's Court Appointed Indigent Appellate Counsel is fraudulently attempting to  treat Petitioner maliciously as though his litigating talents are lacking and is opening an avenue of traversal for the Second District Court of Appeals Judges to ignore Complainants' issues in an attempt to protect malicious guilty State Agents whom have without jurisdiction cause harm to the Petitioner for unjust reasons in furtherance of this malicious conspiracy.

Complainant's indictment was obtained via the use of perjury; Petitioner's conviction was obtained via the use of perjury, id; and, jurisdiction cannot be established with perjury.  There is a judicial admission on the record that the court is without jurisdiction to continue this harassment of Petitioner because of the State of Ohio's failure to prove guilt beyond a reasonable doubt, id; there is judicial admission on the record that the trial court maliciously ignored jurisdiction to impose sanctions upon the Petitioner for no other purpose than to cause harm and/or character assassinate Complainant, id; and, there is a judicial admission on the record that the Trial Court, Assistant Prosecutor, and Court Appointed Counsel amended Petitioner's indictment during the Sentencing Hearing of September 3, 2009, without the jurisdiction to do so, id. Our case law follows the Ohio Constitution, which provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." Section 10, Article I, Ohio Constitution, ... and cannot be cured by the court, as

such a procedure would not only violate the constitutional rights of the accused, but would allow the court to convict him on an indictment essentially different from that found by the grand jury, State v. Colon (2008) 118 Ohio St.3d 26, id at ¶ 17.   At no time have said Respondents maintained lawful jurisdiction of Complainant.   And no matter how or to whom this Pro Se Indigent Complainant presents these jurisdictional issues to—Respondent's lack of jurisdiction is maliciously ignored to protect their subordinates.

Yes, Petitioner can concede that the allegations Ms Miller made might be true; but, as is obvious: State Agents duped that traumatized, less than mentally competent, woman into believing it was the Petitioner whom committed said acts with optical illusions; and then, enticed her to lie, and now she cannot be found; and, after the Complainant proved his innocence—State agents maliciously refuse to address Complainant's innocence because of their incurred liability.   It is only obvious that this Complainant requested the full record for appeal, id.   It is only obvious that Court Appointed Counsel judicially admits that he has fully reviewed the record in his Anders Brief, id; but—yet, he refuses to bring forward to the court of appeals merited Constitutional issues even after talking to Complainant about said issues as is judicially admitted to in his Brief.   Furthermore, jurisdiction can be raised at anytime and cannot be waived, State v. Colon (2008) 118 Ohio St.3d 26.

First Amendment in pertinent part:   Congress shall make no law...prohibiting the free exercise...to petition the Government for redress of grievances.   Every person enjoys some measure of protection against being coerced into cooperating with law enforcement authorities by governmental techniques of intimidation and harassment, whether this protection derives from liberty interest protected by Amend 4, privacy interest protected by this amendment and Amend. 5, or interest in procedural regularity protect by due process clause of Amend. 5, Angola v.

Civiletti C.A. 2 (N.Y.) 1981, 666 F.2d 1.   "When a judge acts where he or she does not have jurisdiction to act, the judge is engaged in an act or acts of treason." United States v. Will, 449 U.S. 200, 216 (1980); Cohens v. Virginia, 19 U.S (6Wheat.) 264 (1821).   Silence can only be equated with fraud when there is a legal and moral duty to speak or when an inquiry left unanswered would be intentionally misleading.   We cannot condone this shocking conduct.   If that is the case we hope our message is clear.   This sort of deception will not be tolerated and if this is routine it should be corrected immediately.   United States v. Prudden, 424 F.2d 1021 (1970); United States v. Tweel, 550 F.2d 297, 299, 300 (1977).

THEFT

On November 3, 2009, Complainant opened an account with Chase Bank with the intentions of starting his own online Publication Company since he can not find employment due to the slanderous allegations herein and is confronted with said slanderous allegation every time he fills out a job application.   Wherefore, Complainant was going to self-publish, "Love Letters That Make Her Lust, Desire, and Dream of Playing" copyright, April 17, 2006, TXu1-234-844. On December 3, 2009, Complainant was informed that he owed said bank 225 dollars for an uncollected account he opened on December 14, 2005; and that this uncollected account was the action of a happening on June 25, 2007, in account number 704734342.   Chase Bank confiscated $26.68, Complainant's full account amount.   Calling Chase Bank (1-877-7303) on December 3, 2009, Complainant was given no relief and was informed that Complainant would have to go to the bank personally.   On December 4, 2009, Complainant went to Chase Bank (2000 East Third Street) and talked with Dylan Tehiani; after that Complainant went to Chase Bank (Dayton Main) and talk with Fayah Jnyumah and at no time was Complainant given just consideration, and informed said Respondent to close said account; at this time Complainant was told he would have to pay 25 dollars to close said account.   Complainant can not endure unjust consideration, denied due process and then compound this violation by enhancing what Complainant believes to be extortion by charging him an additional 25 dollars.   At all times during this alleged indiscretion of Complainant's, Complainant's wallet, identification, social security card, debit card, and credit card were in the possession of Montgomery County Evidence personal due to the illegal arrest and confiscation of said property, id.   It should be judicially noted that

Complainant's personal property should have been returned to him, Sentencing Transcript (July 26, 2007) id at 2; but that said property is still in the control and custody of Montgomery County evidence personal, Sentencing Transcript (September 3, 2009) id at 20. Chase Bank has accepted money from the federal government in the bail-out plan (TARP) and due to this fact the Fourteenth Amendment is applicable to this issue. (Case cite omitted)  At no time has Chase Bank afforded Complainant due process to clarify this issue and refused to provide this Complainant with documentation to prove this alleged indiscretion truly did happened.  It should also be noted that Complainant, allegedly, still owes Chase Bank 225 dollars, plus 25 dollars for closing the account.  Chase Bank in conspiracy with state agents have embezzled and/or extorted and/or are attempting to embezzle and/or extort 252.68 dollars and cents plus 25 dollars from the Complainant and is jeopardizing/barring Complainant's means of participating in commerce. Without said bank account, Complainant cannot establish an online account where patrons could pay Complainant for a copy of his book.  Complainant was in the process of designing a webpage to initiate the virtual commerce that would have covered the World Wide Web.  See http://www.myspace.com/raysloveromancedreams. 18 U.S.C. § 1951, "'(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

"(b) As used in this section --"

"* * * *"

"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."'

<u>RESTRAINING ORDER</u>

Pursuant to U.S.C. 28 Civil Rules 54(c), 61, and 65: Standard for Granting Emergency Relief; Irreparable Harm and Likelihood of Success on the Merits:  A district Court may enter a prohibitory preliminary injunction staying "government action taken in the public interest pursuant to a statutory or regulatory scheme" where the moving party has demonstrated that (1) absent injunction relief, he will suffer "irreparable injury", and (2) there is "a likelihood that he

will succeed on the merits of his action", Plaza Health Labs, Inc. v. Perales, 878 F.2d 577, 580 (2d cir. 1989).

Petitioner will suffer irreparable injury if this matter is allowed to proceed under color of statutory act or scheme, as the Appellate Judges lack the jurisdiction to proceed in this case, and any ruling other than a judgment of acquittal will harm the Complainant; and, an Anders Brief will not accomplish that task; and, can only cause Complainant additional harm.

Petitioner is being denied access to court:  Case ## 07CR1128, 22455, 23465; 09-0954, 08-2225, 07-10541, and 08-6937, id, because of Petitioner's issues and the State of Ohio's State Agents' lack of good character to face the truth, id.  And this denial to face the truth has caused the Complainant his advancement in education, more than (2 1/2) years in prison; and, the fact that he cannot find employment due to the slanderous allegations being disseminated, circulated, and published for no other purpose than to character assassinate Complainant and have superiors turn a deaf ear and/or blind eyes to Complainant's plea for justice.

Petitioner cannot seek employment because State Agents and/or their affiliates are disseminating, circulating, and/or publicizing slanderous allegations and said agents lack the jurisdiction to make such allegations and/or disseminate, circulate, or publicize said slanderous allegations as is judicially admitted, id.

All parties involved lack and/or lacked the jurisdiction to incarcerate and/or continue Complainant's incarceration due to slander, fraud, perjury, and/or judicial admission that every element of Complainant's charge was not present and proven to the jury beyond a reasonable doubt—Double Jeopardy, and without the intervention of this court Complainant's cause of action will only enhance into issues and other Respondents Complainant has no desire to litigate and/or litigate against and holds and earnest belief that he will have to take said issues at bar to

the World Court to obtain a fair and impartial hearing because Respondent's have destroyed Complainant's faith in the United States Judicial System.

There is a judicial admission on the record that proves that an essential element of Complainant's charge was not argued to the jury and proven beyond a reasonable doubt, id.  Leaving all parties involved without the jurisdiction to continue the unwarranted assault upon Complainant and that this issue is being ignored by Respondents to protect said Respondents from incurring any liability that Complainant might justly seek.

There is a judicial admission on the record that without notice and/or an opportunity to respond Complainant was branded with slanderous allegations of rape and/or attempted rape that the court lacked the jurisdiction to consider and that these allegations are an ongoing concern in that the Respondents' refuse to expunge said allegations from Complainant's record knowing and/or should know that said allegations were/are the product of perjury and that said Respondents lack the jurisdiction to impose said sanction and/or continue to allege such slanderous allegation such as "attempted rape"; but, a background check shows this allegation still exists within the records of Montgomery County Court of Common Pleas, http://www.clerk.co.montgomery.oh.us, (public records search by case number 07cr1128).

Complainant has been diligent at requesting redress of his grievances and has been denied for no other purpose than to protect the actions of subordinates and/or personal interest.  That the refusal of Superior Respondents to correct the actions of said subordinates and correct the harm Complainant faces continuously is an act of treason, id; and, causes Complainant additional harm for no other purpose than that of self perseverance that lacks reason, understanding, or legal justification and has denied and/or will continue to deny Complainant of his 1st, 4th, 5th, 6th, 7th, 8th, 13th, and 14th Amendments of the United States Constitution. This constitutes retaliation in

derogation of the First Amendment rights, Rankin v. McPherson, 483 U.S. 378 (1987). It is well

settled that the burdening of First Amendment rights is per se irreparable injury. A finding of

irreparable harm is presumed if First Amendment rights are threatened or impaired, Elrod v.

Burns, 427 U.S. 347, 373 (1967); and, Complainant has successfully impeached all Respondents

and/or fraudulently used evidence that alleges any indiscretion on the part of Complainant, See

Ohio Evidence Rules 607, 613, and 616.

Wherefore, Complainant is entitled to full protection from any and all retaliating actions thought

of or imagined by Respondents. Therefore, Complainant asks this Court for all said relief that is

just and fair within the meaning of just jurisprudence to include a Judgment of Acquittal, id.

CONCLUSION

Complainant has and can prove to a jury that State Agents committed fraud and/or perjury and/or

made slanderous allegations against the Complainant to establish jurisdiction in the first instance

and/or to ignore and/or denied Complainant's established claim of State agents lacking

jurisdiction in the first instance. Complainant has and can prove to a jury that State Agents

committed fraud and/or perjury and/or made slanderous allegations against the Complainant to

establish jurisdiction in the second instance. Complainant has and can prove to a jury that State

Agents ignored Complainant's proof of innocence and the prohibition against double jeopardy to

establish jurisdiction in the second instance. Complainant has and can prove to a jury that at no

time has said State Agents possessed jurisdiction in this matter; and that jurisdiction cannot be

established with the malicious, knowing, and intelligent use of perjury. Complainant has and can

prove to a jury that Complainant knew and Respondents knew and/or should have known that

Complainant's issues where Lack of Jurisdiction, Fraud, Perjury; and, a Judicial Admission

proved that there was insufficient evidence to prove Complainant's guilt of any alleged

indiscretions. These facts are supported with findings of fact and conclusions of law that show said State Agents maliciously committed perjury and or fraud and/or made slanderous allegations against the Complainant, and that these facts were condoned and excused by the presiding Trial Judges in both the first and second instance. These facts are supported with findings of fact and conclusions of law that show said State Agents maliciously committed perjury and or fraud and/or made slanderous allegations against the Complainant and that these facts were ignored and/or condoned and/or excused by the presiding Appellate Judges in the first instance. These facts are supported with findings of fact and conclusions of law that show said State Agents maliciously committed perjury and or fraud and/or made slanderous allegations against the Complainant and that these facts were condoned and/or excused by the Supervisors of said State Agents in the first instance. At all times, Complainant has informed known supervisors of the actions of said state agents and has been maliciously and/or recklessly ignored. Complainant can prove that Complainant can understand the faith and trust a supervisor builds over the years in their subordinates' decisions and/or actions, but Complainants' allegations against said state agents warranted nothing less than fair and full considerations of those allegations, and said supervisors failed to provide Complainant with procedural due process prolonging and continuing Complainant's burdens that have maliciously caused Complainant undue distress and humiliation. Then no Superior can look upon a subordinate when that subordinate has been caught maliciously committing perjury and stealing, and for said Superiors to ignore said allegations and proof there of said allegations commits treason against the United States Constitution and forces Complainant into involuntary servitude without just jurisprudence all due to the slanderous perjury Complainant now presents in detail in aforesaid complaint

<u>PRAY FOR RELIEF</u>

Complainant seeks declaratory, injunctive, punitive, and compensatory relieve and/or damages from Respondents: President Barack Obama, Senator Patrick J. Leahy in their official and personal capacity in the amount of one dollar ($1.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom, individually and separately.   Complainant seeks declaratory, injunctive, punitive, and compensatory damages and/or relief from Respondents: United States Supreme Court Chief Justice; and, Attorney General of the United States in their official and personal capacity in the amount of one million dollars ($1,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom, individually and separately. Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent: Ohio Governor Ted Strickland in his official and personal capacity in the amount of one dollar ($1.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom. Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondents:  Attorney General for the State of Ohio; Ohio Supreme Court Chief Justice, Thomas Moyer; and, Second District Court of Appeals for Ohio Appellate Judges James A. Brogan, Mike Fain; and, Thomas J. Grady in their official and personal capacity in the amount of ten million dollars ($10,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom, individually and separately.  Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondents:  Unknown: Superiors of Montgomery County Ohio State Agents named herein in their official and personal capacity in the amount of

one million dollars ($1,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom, individually and separately.   Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:   Montgomery County Ohio Common Pleas Court Judge John W. Kessler in his official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.   Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:   Montgomery County Ohio Common Pleas Court Judge Mary Wiseman in her official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom. Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:  Montgomery County Ohio Assistant Prosecutor John C Amos in his official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.   Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:   Montgomery County Ohio Assistant Public Defender Carl Goraleski in his official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.   Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:     Montgomery County Ohio Court Appointed Appellate

- 57 -

Attorney Michael Columbus in his official and personal capacity in the amount of five hundred thousand dollars ($500,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom  Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:  Montgomery County Ohio Court Appointed Appellate Attorney Gary Schaengold in his official and personal capacity in the amount of five hundred thousand dollars ($500,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom. Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:  Montgomery County Ohio—Dayton Detective Phillip Olinger in his official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.  Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:  Montgomery County Ohio—Dayton Police Officer Stephen Clark in his official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.  Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:  Montgomery County Ohio—Dayton Police Officer Nathan Curley in his official and personal capacity in the amount of one dollar ($1.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.  Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent:  Montgomery County

- 58 -

Ohio—Dayton Police Officer Chad Knedler in his official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.  Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondents: State agent Cindy Miller in her official and personal capacity in the amount of fifty million dollars ($50,000,000.00).   Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent: Montgomery County Ohio—Dayton Petite Jurors in their official and personal capacity in the amount of fifty million dollars ($50,000,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom individually and separately.  Complainant seeks declaratory, injunctive, punitive, and compensatory relief and/or damages from Respondent: CEO, Chase Bank in his official and personal capacity in the amount of two hundred and fifty-two thousand dollars ($252,000.00); to include an Order of prohibition of any and all retaliation against Complainant and/or impediment upon Complainant's pursuit of happiness and/or freedom.  Complainant seeks a Cease and Desist Order preventing Respondents both known and unknown from disseminating, circulating, or publishing any and all slanderous allegation directed toward the Complainant.   Complainant seeks the complete and full expungement of Complainant's record both adult and juvenile. Complainant preserves the right to litigate all and any know "past" alleged in case number 07CR1128, id.   Complainant seeks his return back into Wright State University in good standings equal to or greater than that of March 24, 2007 and does request internship and/or audit recognition status and fair school credit therefore.  Complainant seeks a Cease and Desist Order to prevent Court Appoint Counsel, Gary Schaengold; and, Montgomery County Appellate judges

from proceeding any further in Case No.: 22455 (sic) [23465] as all parties are barred to argue and/or enter any decision but a decision of acquittal in the case at bar. Complainant seeks a Cease and Desist Order preventing Respondents from using Public Defenders as an offensive weapon against those they are suppose to be protecting and/or as another prosecutor in any manner known or unknown that will cause Complainant and/or any other individual harm and/or character assassination. Complainant seeks a Cease and Desist Order preventing Superior Respondents from paying Public Defenders as this is a conflict of interest and the means Superior Respondents use to use subordinate Respondents as an offensive weapon against those they are suppose to be representing as another prosecutor in any manner known or unknown that will cause Complainant and/or any other individual harm and/or character assassination. Complaint seeks a Restraining Order from all Respondents known and/or unknown from enforcing any and all restraining orders upon Complaint's freedom to specifically include the Ohio Adult Parole Authority. Complainant seeks a Restraining Order on all Respondents known and/or unknown participating in any action of retaliation that will further cause Complainant harm due to said Respondents failure to consider Complainant's issues in a just and fair manner.

AFFIRMATION

Complainant, Raymond Engle, pursuant to 28 U.S.C. § 1746 affirms under the pains and penalties of perjury that the forgoing is true and correct to best of his knowledge, beliefs, and/or ability.

Executed on: _January 27, 2010_

_Raymond Engle_
Raymond Engle

UNITE STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Raymond Engle
           Petitioner

Against                                  Case No.:

Mary Wiseman, at el.
           Respondent

## PROOF OF SERVICE

I, Raymond Engle, do declare that on this date _January 27_, 2010, as required by S.D. Civ. R. 4, have served the enclosed Complaint, Brief and/or Memorandum in Support of Complaint, Memorandum in Support of Injunctive Relief, Order, Discovery, and Motion to file only one copy with the court due to Complainant's poverty via electronic fax and/or email, or via personal delivering said document personally; and/or, via dropping said documents in the United States mail with first class postage attached thereto on every person required to be served and/or counsel for said Respondents.  The names, addresses, and/or fax numbers, and/or email addresses are as follows:

1. President, Barack Obama, 1600 Pennsylvania Avenue NW, Washington, DC 20500, Switchboard: 202-456-1414, FAX: 202-456-2461.
2. Senator, Patrick J. Leahy, 433 Russell Senate Office Building, Washington, DC, 20510-6275, Phone: (202) 224-4242, FAX: (202) 224-3479.
3. United States Supreme Court Chief Justice, John G. Roberts, One 1st St. NE, Washington, DC. 20543.
4. Attorney General of the United States, Eric Holden, U.S. Department of Justice , 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, Main Switchboard 202-514-2000, http://www.justicc.gov/., FAX: 202-514-4001.
5. Ohio Governor Ted Strickland, Governor's Office, Riffe Center, 30th Floor, 77 South High Street, Columbus, OH 43215-6108, General Info: (614) 466-3555, FAX: (614) 466-9354.
6. Attorney General for the State of Ohio, Richard Cordray, 30 E. Broad St., 17th Floor, Columbus, OH 43215, www.ag.state.oh.us.

7. Ohio Supreme Court Chief Justice, Thomas Moyer, Office of the Clerk, 65 South Front Street, 8th Floor, Columbus, Ohio 43215-3421, Phone: 614-387-9530, FAX: 614-387-9539.
8. Second District Court of Appeals for Ohio Appellate Judges: James A. Brogan, Mike Fain; and, Thomas J. Grady, 41 North Perry Street, Fifth Floor, P.O. Box 972, Dayton, Ohio 45422-2170, Phone: (937) 225-4464, FAX: (937) 496-7724.
9. Montgomery County Ohio Common Pleas Court Judge John W. Kessler, 303 West Second Street, Dayton, Ohio 45422, Court Administrator's Office, Phone 937-225-6000, FAX: 937-496-7389.
10. Montgomery County Ohio Common Pleas Court Judge Mary Wiseman, 303 West Second Street, Dayton, Ohio, 45422, Phone: 937-225-4384, FAX: 937-834-7999.
11. Assistant Prosecutor John C Amos, Prosecuting Attorney, Mathias H. Heck, Jr., Montgomery County Prosecutor's Office, 303 West Second Street , P.O. Box 972, Dayton, Ohio 45422-0972, Phone: 937-225-5757, Email: info@mcpo.com.
12. Assistant Public Defender Carl Goraleski, The Law Office of the Public Defender, 117 South Main Street, 4th Floor, Reibold Building, Phone: 937-225-4652, FAX: 937-225-3449.
13. Attorney Michael Columbus,130 W 2nd St, Dayton, OH 45402, (937) 461-2923, http://lawyers.justia.com/lawyer/michael-columbus-esq-485466/contact
14. Attorney Gary Schaengold, in his official and personal capacity, 707 Shroyer Road, Suite B, Dayton, Ohio 45419, email: gschaengold.law@sbcglobal.net.
15. Chase Bank ,CEO, Jamie Dimon, corporate.secretary@jpmchase.com., JPMorgan Chase & Co., Office of the Secretary, 270 Park Avenue, New York, NY 10017.

Pursuant to 28 U.S.C. §1746 and under the pain and penalties of perjury.


Executed on: *January 27, 2010*


*Raymond Engle*
Raymond Engle
54 Bierce Avenue
Dayton, Ohio 45403
937-252-6910
rengle2009@yahoo.com